This was an action on a fire insurance policy by the Fayetteville Building Loan Association against the Mutual Fire Insurance Company of West Virginia, to recover the sum of $1,500.00 and interest, under a mortgage clause attached to a policy obtained by Mrs. S. I. Holliday to insure property held by the building and loan association as security for a $1,500.00 loan. The amount of the policy was $2,500.00. The insurance company defended on the ground that the mortgagor in her application for insurance had made the fraudulent representation that her property was in the town of Alderson, West Virginia, and within thirty yards of a fire hydrant, whereas in fact the property was not so situated, but was located on Flat Top Mountain about a mile and *Page 149 
a half from Alderson, West Virginia. A verdict of $1,890.89 for plaintiff was instructed and returned, and judgment entered thereon. This writ followed.
The main question is presented by a consideration of the so-called standard or "union mortgage clause" attached to the insurance policy. Under this clause the insurance is payable to the building and loan association as its interests may appear. It is further provided therein, "that this insurance as to the interests of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title of the ownership to the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall on demand pay the same." The mortgage clause further provided that the mortgagee or trustee should notify the company of any increase of hazard, and should on demand pay the premium for such increased hazard; and that upon payment of loss to the mortgagee the insurer was to be subrogated to all his rights as to collateral held as security for the mortgage debt.
It is the contention of the plaintiff in error, the insurance company, that under this mortgage clause the material misrepresentation as to the location of the property avoided the policy from its inception by reason of fraud, and consequently the building and loan association took no rights under the mortgage clause. It is further asserted that even though it should be held that the mortgage clause created a separate contract between the mortgagee and the insurance company, yet as such contract had been procured by the fraudulent act of the mortgagor who took out the policy at the instance of and for the benefit of the building and loan association, the association was bound by the act of its agent, and there could be no recovery under the policy. On the other hand, it is contended by the counsel for the defendant in error, the building and loan association, that the mortgage *Page 150 
created a separate contract between the mortgagee and insurance company, which was not affected by the alleged fraudulent act claimed to have vitiated the contract between the mortgagor and the insurer.
Although there are decisions to the contrary, the great weight of authority in this country supports the view that when there is attached to a policy of fire insurance the so-called "standard" or "union" mortgage clause providing that the insurance shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, an independent contract between the insurance company and the mortgagee is created, and no act or omission of the mortgagor, of which the mortgagee is ignorant, will invalidate the policy, whether it occurs before, at the time of, or subsequent to the issuance thereof. Am. Eng. Ency. Law, Vol. 13 (2d ed.) page 206; 14 R. C. L., sec. 215, p. 1038; Vol. 4 Joyce on Insurance (2d ed.) sec. 2795, p. 4776; Vol. 1 Jones on Mortgages (7th ed.) sec. 406-A, p. 568; Note to Brecht v. Law Union Crown InsuranceCo., 18 L.R.A. (N.S.) p. 206; Syndicate Insurance Co. v.Bohn, 65 F. 165; Germania Fire Insurance Co. v. Bally,19 Ariz. 580, 173 P. 1052; Philadelphia Fire Ass'n. v.Evansville Brewing Ass'n., 73 Fla. 904, 75 So. 196; PeopleSaving Bank v. Retail Merchants Mutual Fire Ass'n.,146 Iowa 536, 123 N.W. 198, 31 L.R.A. (N.S.) 455; Allen v. St.Paul Fire Marine Insurance Co., 208 N.W. (Minn. 1926) 816;Bacot v. Phoenix Insurance Co., 96 Miss. 223, 50 So. 729, 25 L.R.A. (N.S.) 1226; Burns v. Ohio Farmers' Insurance Co., 224 S.W. (Mo.) 98; Hanover Fire Insurance Co. v. Bohn, 67 N.W. (Neb.) 774; Reed v. Firemens Insurance Co., 81 N.J.L. 523,80 A. 463, 35 L.R.A. (N.S.) 343; Hastings v. Westchester FireInsurance Co., 73 N.Y. 141; Federal Land Bank v. Globe Rutgers Fire Insurance Co., 121 S.E. (N.C. 1924) 37; FiremensInsurance Co. v. Boland, 30 Ohio Cir. Ct. Rep. 811; Smith v.Union Insurance Co., 25 R.I. 260, 55 A. 715; Ormsby
v. Phoenix Insurance Co., 5 S.D. 72, 58 N.W. 301.
The authorities holding that such a mortgage clause protects the mortgagee against only the subsequent acts or omissions of the mortgagor are: Glens Falls Insurance Co. v. Porter, *Page 151 44 Fla. 568, 33 So. 473 (but see Phil. Fire Ass'n v. EvansvilleBrewing Co., 73 Fla. 904); Genesee Falls Permanent Savings etc.Ass'n. v. U.S. Fire Insurance Co., 16 A.D. 587,44 N.Y.S. 979; Hanover Fire Insurance Co. v. National ExchangeBank, 34 S W. (Tex.) 333; Liverpool etc. Insurance Co. v.Agricultural Savings etc. Co., 33 Can., S.C. 94, 1 BRC 593;Omnium Securities Co. v. Canada Fire etc. Insurance Co., 1 Ont. 494; Young Men's Lyceum v. National B. F. F. Insurance Co.,163 N.Y.S. 226.
In the case of Syndicate Insurance Co. v. Bohn, 65 F. 165, the Court, through Sanborn, Circuit Judge, said: "Our conclusion is that the effect of the union mortgage clause when attached to a policy of insurance running to the mortgagor, is to make a new and separate contract between mortgagee and the insurance company, and to effect a separate insurance of the interests of the mortgagee, dependent for its validity solely upon the course of action of the insurance company and the mortgagee, and unaffected by any act or neglect of the mortgagor, of which the mortgagee is ignorant, whether such act or neglect was done or permitted prior to the issue of the mortgage clause." It was held that the fact that the mortgagor did not own the property at the time the policy was issued did not affect the rights of the mortgagee, although the policy provided it should be avoided if the interests of the insured were other than unconditional and sole ownership.
In Hastings v. West Chester Fire Insurance Co., 73 N.Y. 141, the court held that the prior act of the insured in obtaining other insurance had no affect upon the union mortgage clause attached to the policy in favor of the mortgagee, and that the mortgagee could recover the full amount guaranteed to it by the said union clause; that the mortgage clause operated as an independent insurance of the mortgagee's insurance, and gave the mortgagee the same benefit as if he had taken out a separate policy free from the conditions imposed upon the owner, and making him responsible only for his own acts.
In Germania Fire Insurance Co. v. Bally, 19 Ariz. 580,173 P. 1052, the court said: "But, aside from these reasons, the *Page 152 
insurance clause attached to the policy in terms provides that the policy shall not be invalidated as to the mortgagee's interest by reason of any act or neglect of the mortgagor or owner, and, according to the majority of the authorities this affords protection against previous acts as well as subsequent acts of the insured. As is well known, many insurance policies are issued, primarily, to protect mortgages. In fact, it is made a condition of the mortgage as in this case, that the insurance shall be carried by the owner of the property to protect the interests of the mortgagee. This exaction by the mortgagee is well known to the insurance companies, and they are only too glad to take the risk. The insurer issues the policy to the mortgagor. It is a contract between the mortgagor and the insurance company. The mortgagee is not interested in the contract in its inception, and only becomes interested after its execution, when the mortgage clause is attached to the policy for his protection. We think the mortgagee, when a policy is presented to him with a standard mortgage clause attached thereto in his favor, is justified in assuming that the insurance company has satisfied itself that the policy is valid and free from impeachment for any conduct or act of the insured at its inception prior to the attachment of the mortgage clause. The authorities are not agreed on this proposition, but we think the better reason is with those that hold the rights of the mortgagee are unaffected by any act or neglect of the insured as well before the attachment of the mortgage clause as afterward."
In Smith v. Union Insurance Co., 25 R.I. 260, 55 A. 715, the court said: "The two contracts combined in the policy and the mortgage clause are separable and independent from the beginning. When the first fails, or if it never attaches, the second begins and proceeds subject to its own conditions and limitations."
In Allen v. St. Paul Fire Marine Insurance Co., 208 N.W. (Minn. 1926) 816, it was held that, "the union mortgage clause in an insurance policy constitutes an independent contract between the insurer and the mortgagee; and that contract is not avoided, though at the time of the issuance of the policy there was other insurance upon the property, and *Page 153 
though it was a condition of the policy that in such event the policy should be void."
In Fire Ass'n v. Evansville Brewing Ass'n., 75 So. (Fla. 1917) p. 196, the court said: "The standard mortgage clause creates an independent contract of insurance for the separate benefit of the mortgagee, ingrafted upon the main contract of insurance contained in the policy itself, and to be rendered certain and understood by reference to the policy." And, "A policy of fire insurance in the standard form, which is void as to the assured owner, because of his breach of the warranty that his interest is not other than unconditional and sole ownership, may nevertheless be valid as to a mortgage, when the mortgage clause in the usual form is attached to the policy."
Insurance Co. v. Boland, 30 Ohio Cir. Ct. Rep. 811, was a case in which the policy in question contained a standard union mortgage clause. The court held that, "A mortgagor is not in any sense the agent of the mortgagee in procuring insurance on the mortgaged premises for the benefit of the mortgagee as his interest may appear and in accordance with an agreement so to do;" that, "where the mortgagee is not a party to the procuring of the insurance contract, and had no knowledge of fraud in the procuring of the insurance, an allegation of fraudulent representations and concealments on the part of the mortgagor in the procuring of the insurance does not constitute a defense to the claim of the mortgagee under the policy;" The court further said: "The defendant company contemplated the possibility of concealment and fraud by the applicant, the mortgagor, in obtaining her insurance and of concealment and falsehood concerning the property, the fire, the loss and otherwise, and discounted all this by proper provisions in its policy as to its liability with the mortgagee that it would receive the premium from the mortgagor, applying the condition of the policy in which it provided against all these acts and omissions and concealments of the mortgagor, so as not to affect or make invalid its obligations to the mortgagee; and to make itself safe on its liability thus assumed in case of loss, it stepped into the shoes of the mortgagee, and by its contract became and was subrogated *Page 154 
to all the rights, liens, claims, security and indemnity of whatever character that the mortgagee had or could have concerning her interest in the property described in the policy."
These excerpts from the above decisions are typical of the courts adhering to the majority rule, which in our opinion, is based upon sound legal principles, and has our approval. The defendant insurance company can not defeat the action of the plaintiff mortgagee by setting up the alleged fraudulent representations made by the mortgagor as to the location of the insured property 30 yards from a fire hydrant, in the absence of evidence tending to show that the mortgagee had knowledge of such statement. This conclusion is decisive of the main controversy in this case.
It is contended by the insurance company that the court erred in overruling its demurrer to the declaration, because that pleading shows on its face that the action is brought by theFayetteville Building Loan Association, whereas from the policy filed as a part of the declaration it is apparent that under the mortgage clause the insurance was payable to the Fayette Building Loan Association. This position is untenable. Board of Education v. Trustees, 78 W. Va. 445;Kingman Mills v. Furner, 89 W. Va. 511; McQuoid v. WestVirginia Newspaper Publishing Co., 141 S.E. 398, handed down this term. The proof clearly establishes the fact that the Fayette Building Loan Association was the same corporation as the Fayetteville Building Loan Association.
Defendant insurance company also assigns as error the action of the court in overruling its demurrer to the declaration because it being apparent from the insurance policy filed therewith, that the debt of the mortgagee did not equal or exceed the amount for which the property was insured, the mortgagee could not alone maintain an action on the policy. It is contended that the present suit should have been instituted by the mortgagor; and that, in any event, if brought by the mortgagee, the mortgagor should have been made a party defendant. The authorities are not in entire accord upon this question, but we believe that under the circumstances of the instant case, the action was properly *Page 155 
brought in the name of the mortgagee without naming the mortgagor as a party plaintiff or defendant. Under the standard mortgage clause, a separate contract was created between the insurer and the mortgagee which was not in any way affected by or dependent upon the contract between the mortgagor and the insurance company. The mortgagee was entitled to maintain an action in his own name to recover the extent of his interest in the policy. Palmer Savings Bank v. Insurance Co. of NorthAmerica, 44 N.E. (Mass.) 211; Colby v. Parkersburg InsuranceCo., 37 W. Va. 789; Bacot v. Phoenix Insurance Co., 50 So. (Miss.) 729; Ebensburg Building Loan Ass'n. v. WestchesterFire Insurance Co., 28 Pa. Super. 341; Smith v. UnionInsurance Co., 25 R.I. 260.
It is further contended by the defendant that the court erred in directing a verdict for the plaintiff in the sum of $1,890.89, because there was no evidence upon which to base such a verdict. There is evidence to the effect that the indebtedness due the building and loan association at the time the fire occurred on June 7, 1926, was $1,729.04. Interest on that amount at 6% computed from the date of the fire to the time of the verdict, April 12, 1927, would, when added to the principal sum, fall far short of the amount of the directed verdict. The secretary of the building and loan association testified that at the time of the trial the mortgagor was indebted to the building and loan association, "practically $1,900.00 under our contract." He did not attempt to give the calculations used in arriving at this conclusion. This evidence was uncertain and unsatisfactory, and was not sufficiently definite on which to give a peremptory instruction for an amount certain. The burden is on a plaintiff to prove with reasonable certainty the amount of his recovery. Here we find that there was owing to plaintiff at the time of the fire $1,729.04; at the time of the trial plaintiff says that there was approximately $1,900.00 due, and the court takes the case from the jury and finds that there was $1,890.89 due. There is no exact basis for such sum.
In view of the fact that we are unable to ascertain from the record upon what evidence the trial court based his directed verdict, we must reverse and remand the case. *Page 156 
The judgment will be reversed, the verdict set aside, and a new trial awarded.
Judgment reversed; verdict set aside; new trial awarded.