UNION TRUST COMPANY OF ELLSWORTH

*vs.*

PHILADELPHIA FIRE AND MARINE INS. CO.

UNION TRUST COMPANY OF ELLSWORTH

*vs.*

NATIONAL FIRE INS. CO. OF HARTFORD.

UNION TRUST COMPANY OF ELLSWORTH

*vs.*

NATIONAL LIBERTY INS. CO. OF AMERICA.

Hancock.        Opinion March 7, 1929.

*Hale & Hamlin,*
*George E. Thompson,* for plaintiff.
*William H. Gulliver,*
*William E. Whiting,*
*Theodore Gonya,* for defendants.

SITTING: WILSON, C. J., STURGIS, BARNES, BASSETT, JJ., PHILBROOK, A. R. J.

WILSON, C. J.    These actions brought under Sec. 38 of Chap. 87 by the same plaintiff on policies of fire insurance respectively issued by each of the defendants, were tried together, and if we construe the stipulations of the parties correctly, involve the same issues and may be disposed of by the same mandate in each case, except as to the measure of damages, if the finding should be for the plaintiff.

The testimony was taken out below, and the cases reported to this Court for determination upon the writ and pleadings in the case against the National Fire Insurance Company of Hartford, and so much of the evidence as is legally admissible. Much of the evidence taken out on both sides may not have been strictly ad-

missible, but enough admissible testimony is included in the record to warrant the finding of the following facts:

In August, 1920, one Curtis Durgain of Bangor owned a farm in the town of Sedgwick in Hancock county, and conveyed it by a mortgage deed to the plaintiff to secure a loan of two thousand dollars. Sometime after the giving of the mortgage, there was at least one or more policies of fire insurance on the buildings, one of which policies appears to have been issued by the National Fire Insurance Company of Hartford, one of the defendants in these actions, and which was deposited with the plaintiff bank as mortgagee.

At the time when the mortgage was given, the premises were occupied by one Wessel, son-in-law of Durgain, during the entire year and also by Durgain during a portion of the year. In the fall of 1924, the son-in-law's family having been broken up, the son-in-law went away to work leaving no one in the house. He came back at times to attend to certain of the farm work, but did not occupy the house during the winter and spring of 1924-5.

On April 14, 1925, Durgain went to an insurance agency in Bangor, representing the Philadelphia Fire and Marine Insurance Company and the National Fire Insurance Company of Hartford, Conn., and took out two policies of insurance for $1,900 each on the premises in Sedgwick, the policies being in the standard form required by the statutes of this state and were each made payable to the plaintiff as mortgagee as its interests should appear. It is on these policies that two of the actions are based.

At the time of making application for these polices, Durgain, undoubtedly, represented to the agent that the premises were occupied by his son-in-law. Sometime in April, 1925, a representative of the National Fire Insurance Company of Hartford from its home office wrote its agent in Ellsworth that it was being bound by a policy on farm buildings in Sedgwick, and inquired if it was the same farm as the one bound by a policy previously issued from the Ellsworth agency.

Upon investigation, the agent learned that the buildings were unoccupied, and for the first time that it was mortgaged, as the policy then in force was not made payable to the mortgagee, though it had been delivered to the mortgagee by Durgain.

The Ellsworth agent thereupon sent a notice to Durgain of cancellation of the policy issued through his agency. Durgain then proceeded to obtain an additional policy to the amount of $2,500 in the National Liberty Insurance Co. of America through another agency in Bangor. In applying for this policy, he represented to the agent that the buildings were then occupied by his son-in-law. This policy bears date of May 4, 1925, and is the basis of the third action.

Some days later, this last policy was delivered to the treasurer of the plaintiff bank by Mr. Durgain, who at the same time explained that he had received a notice that the policy then held by the bank issued from the Ellsworth agency would be cancelled on May 12, 1925, and requested that it be delivered up for cancellation, which was done.

On May 16 the buildings were totally destroyed by fire. At this time they were unoccupied according to the definition of that term in *Hanscom* v. *Insurance Co.*, 90 Me., 333, 338, and had been so unoccupied for a period of more than six months, and, therefore, were vacant when Durgain made application for each of the policies involved in these actions; and the treasurer, who was also a director of the company and who represented the bank in its dealings with Durgain, knew that Durgain's son-in-law had not been regularly occupying the premises since the previous fall.

The plaintiff bank on the 16th day of May at the time of the fire had in its possession only the policy issued by the defendant, the National Liberty Insurance Company of America, but after the fire Durgain delivered to it the policies issued on April 14, 1925, by the other two defendants.

In 1924, on May 21, Durgain being sometime in arrears on the mortgage indebtedness, the plaintiff bank began foreclosure proceedings under which Durgain's equity of redemption in the premises expired May 21, 1925, or five days after the fire. No effort, however, was made by either defendant prior to the expiration of the equity of redemption to pay the mortgage indebtedness and take an assignment of the mortgage and note under the provisions of its policy. In fact the defendants from the first notice of the loss have taken the position that they were not liable either to Durgain or the plaintiff upon these policies because of the mis-

representations of Durgain that the premises were occupied as farm buildings, and were in fact unoccupied at the time of the issuing of the policies and at the time of the loss; and though the plaintiff, following the termination of the period of redemption, offered to convey the property to the defendants if paid the indebtedness, each refused to accept the offer, and these actions were brought.

The defendants raise three main issues under a brief statement under the general issue; first, that by reason of Durgain's misrepresentation as to occupancy in applying for the policies no valid contract of insurance ever existed and, therefore, the plaintiff acquired no rights under them, and further that the "union mortgage clause," so-called, in the standard policy, Sec. 5, R. S., Chap. 53: that "no act or default of any person other than such mortgagee or his agents or those claiming under him shall affect such mortgagee's right to recover in case of loss" applies only to acts subsequent to the issuance of the policy, and that a mortgagor in such cases in obtaining the insurance is the agent of the mortgagee, who is bound by his representations; second, that the bank and mortgagee in this instance had knowledge of the facts of unoccupancy or of such facts that should have put it upon its inquiry and amounted to knowledge; third, that by its foreclosure the plaintiff put itself in a position so that it could not comply with the terms of the policy requiring it to assign the mortgage deed and note and, therefore, can not recover.

It is necessary to consider only the first two points. Prior to the enactment in this state in 1895 of the provisions for a standard policy of fire insurance the authorities are all agreed that the protection of the mortgagee under a policy obtained by the mortgagor, though made payable to the mortgagee, might be destroyed by some act or neglect of the mortgagor without the knowledge of the mortgagee. The insurance in such cases was held to be upon the interest of the mortgagor alone and not upon that of the mortgagee, and a "payable in case of loss" clause inserted in or attached to the policy was held to be merely a contingent order assented to by the insurance company and only gave the mortgagee the same right to recover that the mortgagor had. The mortgagor's rights being forfeited, the mortgagee was without protection. *Brunswick Sav.*

*Ins.* v. *Commercial Ins. Co.,* 68 Me., 313; *Bank* v. *Insurance Co.,* 81 Me., 570.

The authorities are now almost unanimously in accord that by the insertion of the provision now contained in the standard policy and commonly referred to as the "union mortgage clause" a new relation is entered into between the insurer and the mortgagee, *viz:* that of insurer and insured, and independent of the contract with the mortgagor, and insuring the interest of the mortgagee. *Hastings* v. *Westchester Ins. Co. et al,* 73 N. Y., 141; *Eddy* v. *L. A. Corporation,* 143 N. Y., 311; *Smith* v. *Union Ins. Co.,* 25 R. I., 260; *Genesee Falls Sav. & Loan Asso.* v. *U. S. Fire Ins. Co.,* 44 N. Y. S., 979; *Germania Fire Ins. Co.* v. *Bally,* 19 Ariz., 580, 585; *Reed* v. *Firemen's Ins. Co.,* 81 N. J. L., 523, 526; *Magoun* v. *Fireman's Fund Ins. Co.,* 86 Minn., 486, 490; *Hartford Ins. Co.* v. *Olcott,* 97 Ill., 439; *Savings Bank* v. *Ins. Co.,* 146 Ia., 536, 540; *Syndicate Ins. Co.* v. *Bohn,* 65 Fed. R., 165; *Gilman* v. *Ins. Co.,* 112 Me., 528, 535; Cooleys Brief on Ins., 2nd Ed., Vol. 3, pp. 1988-1990; *Federal Land Bank* v. *G. & R. Fire Ins. Co.,* 187 N. C., 97; *Bacot* v. *Phoenix Ins. Co.,* 96 Miss., 223; *Ormsby* v. *Insurance Co.,* 5th So. Dak., 72 (58 N. W., 301, 302). Upon this point, the only case not expressly in accord is *Brewing Co.* v. *Ins. Co.,* 81 Ohio St., 1, 21; but the cases cited by the Court in this case in support of its position were for the most part decided before the adoption of a "union mortgage clause" by the state in which they were decided.

The most common form of "union mortgage clause" provides that if the policy be made payable to a mortgagee as his interest shall appear, the interest of the mortgagee shall not be invalidated by any "act or neglect of the mortgagor or owner," and is usually coupled with certain rights of subrogation, if the insurer sees fit to pay the mortgage indebtedness.

There may also be said to be practical unanimity in the authorities that under such "union mortgage clause" no act or default by the mortgagor or owner after the inception of the policy, if unknown to the mortgagee, though invalidating the policy as to the mortgagor or owner, will invalidate the contract of insurance between the mortgagee and the insurer, as will appear in the cases above cited.

The only material divergence of opinion is as to the effect of a

534

misrepresentation by the mortgagor, when applying for a policy, as to ownership or occupancy or of any other material fact affecting the risk, so that the policy was never valid as to him.

A strong preponderance of authority, however, is in favor of holding that any acts or neglect of the mortgagor or owner whether prior or subsequent to the inception of the policy will not invalidate the rights of the mortgagee under a "union mortgage clause." *Hastings* v. *Westchester Ins. Co.*, supra; *Eddy* v. *L. A. Corp. et al*, supra; *Smith* v. *Union Ins. Co.*, supra; *Syndicate Ins. Co.* v. *Bohn*, 65 Fed. R., 165; *G. & R. Fire Ins. Co.*, supra; *Bacot* v. *Phoenix Ins. Co.*, supra; *Hanover Fire Ins. Co.* v. *Bohn*, 48 Neb., 743; *Savings Bank* v. *Ins. Co.*, 146 Ia., 536; *Reed* v. *Fireman Ins. Co.*, supra; Cooleys Briefs on Ins., 2nd Ed., pp. 1988-90; also see case note 25 L. R. A. (N. S.), 1226; 14 R. C. L., 1038.

The only cases generally cited to the contrary are *Glen Falls Ins. Co.* v. *Porter*, 44 Fla., 568; *Hanover Fire Ins. Co.* v. *Exchange Nat. Bk.* (Tex Civil Appl.), 34 S. W., 333; *Brewing Co.* v. *Insurance Co.*, supra, and certain New York cases, decided chiefly in the appellate division of the Supreme Court, none of which, however, can be held to overrule *Hastings* v. *Westchester Ins. Co.*, but base their conclusions on different factual conditions, which the court held differentiated the case then at bar from the Hastings case.

In the Hastings case, while the final issue was one of prorating of loss, the question which raised it was a policy placed on the property prior to the inception of the one on which the action was brought and without the knowledge of either the insurer or mortgagee. The court held that it made no difference whether it was placed on prior or subsequent to the insuring of the mortgagee's interest under the "union mortgage clause," the rights of the mortgagee were not affected. The Hastings case has since been invariably considered by all courts as holding that under a "union mortgage clause," at least, like that in New York State, a mortgagee was protected against any act of a mortgagor which invalidated the policy as to him, whether done before or after the issuance of the policy. This construction was also later confirmed by the New York Court in *Eddy* v. *L. A. Corp.*, 143 N. Y., 311, 323, in an opinion written by Justice Peckham, later Justice of the United States Supreme Court.

The first New York case cited by counsel as inconsistent with this

view is *Graham* v. *Fireman's Ins. Co.*, 87 N. Y., 69. The opinion in this case is written by the same judge who wrote the opinion in the Hastings case. No reference to the Hastings case is found in the opinion. The misrepresentation was as to the owner of the building, it being stated that the owner was a widow who was using the building for hotel purposes, when as a matter of fact the owner of the property was an infant child, three years of age, who, of course, did not conduct the hotel. The Court held that an act of misrepresentation could not be made by a child of such tender years, and, that not only the act complained of was not within the terms of the "union mortgage clause" of that state, but it further appeared from the statement of the case that the misrepresentation was made by the mortgagee's own agent.

The other New York cases cited as being contrary to the rule of construction laid down in the Hastings case are those of *Genesee Falls P. Sav. & L. Ass.* v. *U. S. Fire Ins. Co.*, 44, N. Y. S., 979; *Young Men's Lyceum* v. *National B. F. Fire Ins. Co.*, 163 N. Y. S., 226, and the case of *Goldstein* v. *National Liberty Ins. Co.*, but recently decided and not reported. The reasoning in these cases, however, is far from convincing.

In Genesee Falls P. Sav. & L. Ass. case the court without differentiating the facts from those in the Graham case, merely holds that if a misrepresentation as to ownership was not an act or neglect in the Graham case it could not be in the case then at bar, where the misrepresentation by the insured apparently was that the title was in himself, when as a matter of fact it was in himself and wife as tenants by the entirety. In this case it appears that the mortgagee must have known that the representation was false and failed to notify the insurance company, and hence could not recover for this reason, as the court holds. Instead of in any way overruling or modifying the Hastings case, the Court expressly affirmed the ruling in that case as to the nature of the contract with the mortgagee under such a policy, and declared it to be the settled law of the state.

In the Young Men's Lyceum case it was held, though one's reason does not readily accept the conclusion, that a warranty by the mortgagor and owner that there was a hydrant within 500 feet of the building and was not an act of neglect on the part of the owner

or mortgagor and hence was not within the "union mortgage clause." The recent case of *Goldstein* v. *National Ins. Co.* simply follows the last named case in holding that a warranty was not an "act" within the meaning of the "union mortgage clause."

The case of *Baldwin* v. *German Ins. Co.*, 105 Ia., 379, sometimes cited as supporting the doctrine here contended for by the defendants is differentiated in *Savings Bank* v. *Ins. Ass'n*, 146 Ia., 536, 538, and the rule contended for by the plaintiff in the case here at bar was adopted in that state.

This rule is becoming more widely adopted as the true construction of the "union mortgage clause" and is being so recognized by the text writers and annotaters ; Cooley's Briefs on Insurance, 2nd Ed., Vol. 3, p. 1998 ; 14 R. C. L., 1038, see case notes 18 L. R. A. (N. S.), 206 ; 25 L. R. A. (N. S.), 1226.

It may be well to here note, however, in order that it may not be inferred that it was overlooked, that the clause contained in the standard policy adopted by our state differs in terms from that generally in vogue in other states. The provision in our statute reads : "No act or default of any person other than such mortgagee or his agent . . . shall affect such mortgagee's right to recover in case of loss," while the clause usually found in other states is that no act or neglect by the mortgagor or owner shall invalidate the mortgagee's rights.

Under the "union mortgage clause" contained in the standard policy of this state, therefore, if the mortgagor, under a mortgage containing a covenant to keep the premises insured for the benefit of the mortgagee, in obtaining insurance made payable to the mortgagee, acts as agent of the mortgagee in all respects, a different result might be reached than in the states where the mortgagee by the terms of the "union mortgage clause" is protected against any "act or neglect of the mortgagor or owner."

Notwithstanding the statement in Cooley's Briefs on Insurance, 2nd Ed., Vol. 3, p. 2393, that certain courts have held that a mortgagee was protected only against acts subsequent to issuance of the policy because in obtaining the insurance the mortgagor was acting as agent of the mortgagee and presumably the representations of the agent bound the principal, and citing *Glen Falls Ins. Co.* v. *Porter*, 44 Fla., 582 ; *Genesee Falls Sav. & Loan Ass'n* v. *U.*

*S. Fire Ins. Co.*, 44 N. Y. S., 979; *Am. Cent. Ins. Co.* v. *Cowan*
(Texas Civil Appls.), 34 S. W., 460; *Graham v. Fireman's Ins.
Co.*, 87 N. Y., 69, we do not find the statement in the text is sus-
tained in the report of the cited cases. In all these cases the con-
clusion of the court is based on other grounds and the agency of the
mortgagor or owner is not even discussed.

In Massachusetts, however, in *Palmer Sav. Bank* v. *Insurance
Co.*, 166 Mass., 189, 194, and in *Union Inst. for Savings* v. *Phoenix
Ins. Co.*, 196 Mass., 230, the mortgagor in both cases acting in
compliance with a covenant in his mortgage was held to be the agent
of the mortgagee, at least, in obtaining insurance for the benefit of
the mortgagee. The issue involved in the cases at bar, however, was
not involved in either of these cases.

To the extent of arranging for the insurance of the mortgagee's
interest under a policy containing a "union mortgage clause" and
in compliance with a covenant in his mortgage, the mortgagor may
perhaps be regarded as acting as agent of the mortgagee in the in-
sertion of a "payable in case of loss clause" in the policy; but in so
far as he acts in obtaining a policy on his own interest and in his
own name as owner, he is clearly not acting as agent for the mort-
gagee. The error of those contending the contrary comes, we think,
in holding the two contracts are dependent and not independent,
and the insurance of the mortgagee's interest can not be valid with-
out a valid insurance of the interest of the mortgagor; but the in-
surance of the mortgagee's interest under the clause is a separate
and independent contract, as the cases above cited almost unani-
mously hold, based on a consideration, *viz:* the promise of the mort-
gagee to pay extra premium if there should be increased hazard not
paid for by the mortgagor and to assign the entire mortgage and
debt in case the mortgage debt is paid in full by the insurer instead
of the amount of the insurance. *Syndicate Ins. Co.* v. *Bohn*, 65
Fed. R., 165, 176; *Hastings* v. *Westchester Ins. Co.*, supra; Col-
ley's Briefs on Ins., 2nd Ed., Vol. 3, p. 2391.

In so far, therefore, as the mortgagor makes representations or
warranties in applying for a policy on his own interest, the mort-
gagee has no control over his acts and may have no knowledge or
means of knowledge of the facts upon which the representations or
warranties are based. It is only in case representations are made

affecting the mortgagee's interest in the property that he could be said to be bound thereby, if at all.

To hold otherwise would frustrate the very purpose of the "union mortgage clause." Prior to its insertion in the standard policies, the mortgagee might be deprived of his protection by some act or neglect of the mortgagor of which he had no knowledge and to protect himself would be compelled to take out separate insurance in his own name.

It was to avoid this that the "union mortgage clause" was inserted. As soundly reasoned by the courts, which have held that it covered prior as well as subsequent acts or neglect, otherwise no mortgagee could safely accept a policy of insurance obtained by the mortgagor or owner with a "payable in case of loss" clause. To ensure protection, every Bank and Loan and Building Association and mortgagee would have to investigate every representation or warranty made by the mortgagor in obtaining a policy for its benefit, or take out insurance in its own name as before the enactment of this provision.

We think the intent of the legislature was to relieve the mortgagee of this burden and safeguard his interest against every act of a mortgagor of which he had no knowledge or notice, and that the provision in the standard policy of this state should be construed with the same intent in view.

It is the legislative intent which is the law, and a thing within the letter is not within the statute, if contrary to intention, *Carrigan* v. *Stillwell*, 99 Me., 434, which means the intent gathered from the whole statute, text and context, and the purpose it was enacted to accomplish. *Craughwell* v. *Trust Co.*, 113 Me., 531, 535.

We are, therefore, of the opinion that the enactment of this provision in every state where found was with the same purpose in view and with the same intent in mind, and notwithstanding some variation in terms should have a common construction unless the contrary intent clearly appears, which does not in this instance.

The Minnesota Court, which state has a similar "union mortgage clause" to ours, so holds. In *Magoun* v. *Firemen's Fund Ins. Co.*, 86 Minn., 486, 491, it says: "A comparison of the union clause as it appears in policies issued in different states with that now before us will show that there is no substantial difference in them and the authorities are uniform in their construction of such a clause."

In this case this court also says: "the efficiency of the insurance contract with this plaintiff (the mortgagee) was not dependent upon the validity of the contract between the defendant company and the estate of the deceased or her legal representatives," the deceased having been the owner.

In any event, this Court in *Gilman* v. *Insurance Co.*, 112 Me., 528, in both the majority and minority opinion, though the precise issues here raised are not involved, apparently assumed that the language of our standard policy had the same effect as that of other states, and that the accepted construction was that it protected the mortgagee against any act or neglect of the mortgagor either at or subsequent to the inception of the policy unless the same was known to the mortgagee.

But in reason and based on the authorities, a mortgagee under such a clause is protected only where the act or neglect of the mortgagor or owner is unknown to him. *Eddy* v. *L. A. Corp.*, 143 N. Y., 311, 324; *Syndicate Ins. Co.* v. *Bohn,* supra, p. 177; *Genesee Falls P. Sav. & L. Ass'n* v. *U. S. Fire Ins. Co.*, 44 N. Y. S., 979, 981; Cooley's Briefs on Ins., 2nd Ed., p. 2391. If he has actual knowledge of any act or neglect that would invalidate the policy, or such knowledge of facts as would induce a man of ordinary prudence to make further inquiries, which would have disclosed acts or neglect by the mortgagor that would void the policy, either at its inception or afterward, then the provisions of the "union mortgage clause" will not protect him. He is in such cases chargeable with knowledge of all facts which by the exercise of reasonable diligence he would have ascertained. The means of knowledge under such circumstances are the same as knowledge itself. *Knapp* v. *Bailey,* 79 Me., 195, 204; *Morey* v. *Milliken,* 86 Me., 464, 475; *Coleman* v. *Dunton,* 99 Me., 121; *Hudson Structural Steel Co.* v. *Smith & Rumery Co.*, 110 Me., 123.

We think from the record in the case at bar it is clear, and we so find, that the plaintiff bank must be charged with such information as to the unoccupied condition of these buildings not only prior to and at the time the policies sued on were issued, but afterwards, and prior to the loss, that it should have investigated farther, in which case it would have learned facts that would have disclosed the invalidity of any policies of insurance issued in place of the one it had.

The treasurer of the plaintiff bank, who represented the bank in the dealings with Durgain, admitted according to the record that prior to the fire he was advised that the old policy was cancelled for some irregularity in the form, though his testimony in this respect seemed disingenuous rather than frank. He was quite sure that before the fire he inquired of the agent why it was cancelled, but did not recall the reason given. The agent, however, testified that if he was asked, unoccupancy was given as the reason.

The treasurer, however, testified that he knew that Durgain lived in Bangor and that his son-in-law Wessel was not living on the premises regularly since the fall before the fire, though he understood he was returning there from time to time.

A part of his testimony on this issue was as follows:

Q. "And you knew that Wessel was not living there regularly, didn't you?"

A. "Yes, at the last of it. I knew he wasn't living there regularly. I knew he was away working."

And in further testifying he stated in answer to similar questions:

A. "I knew that during a part of the time he was not living there regularly. The latter part of it I knew he was not living there regularly."

Q. "You knew that the place was unoccupied, so far as Wessel was concerned from the fall before up to the time of the fire, didn't you?"

A. "Why, I knew he wasn't occupying it regularly."

From the admission and testimony of this official, the plaintiff must be held to have had knowledge of facts which should have led a careful and prudent man who was relying on policies of insurance for protection to make further inquiries as to the occupancy of these premises.

Any inquiry would have disclosed that Wessel left the premises in the fall of 1924 to work away and did not return there again before the fire, except to pick the apples in the fall and occasionally visit the premises during the winter, but never again to take up his abode there — conditions which under the rulings in *Hanscom* v. *Insurance Co.*, 90 Me., 333, 338, and *Knowlton* v. *Insurance Co.*, 100 Me., 486, 487, would have voided any policy of insurance on the buildings.

Having failed to make such inquiries, the plaintiff must be held to be charged with full knowledge of these conditions which by the exercise of ordinary diligence it would have obtained.

For this reason judgment must be entered for the defendant in each suit.