GEORGIA HOME INSURANCE COMPANY V. I. J. GOLDEN.

No. 6540.    Decided March 18, 1936.
(91 S. W., 2d Series, 695.)

*Berry, Warlick & Gossett,* of Vernon, for appellant.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

The certificate of the Court of Civil Appeals is lengthy, and we will state only the material facts.

On February 27, 1932, appellee, I. J. Golden, sold to one M. R. Billings certain furniture and retained a mortgage lien

thereon to secure the purchase price. At the time of the sale Billings agreed to obtain a policy of fire insurance on the furniture containing a mortgage clause providing that in the event of loss by fire the insurance should be payable to Golden as his interest might be. On March 7, 1932, Billings obtained a policy from appellant, Georgia Home Insurance Company, covering the furniture. Two days later the building in which the furniture was located was burned and the furniture was destroyed. Shortly thereafter, the insurance company refunded to Billings the premium on which he had paid and Billings executed a release. Among other things, this release recited that in obtaining the policy Billings had withheld from the company certain information, which, if known by the company at the time, would have caused the company not to issue the policy. Billings testified on trial of the case that at the time he took out the insurance he knew that there existed a conspiracy to burn the building and the furniture; that he had been told by one Crabtree that he (Crabtree) would see that the house and furniture were burned; that the main reason he had for taking out the policy was because he thought the furniture was going to be burned. He did not advise the insurance company before the issuance of the policy or before the date of the fire that the house would likely be burned. It is undisputed that appellee, Golden, had no information of any conspiracy to burn the property or of the fraud on the part of Billings in securing the policy.

The policy of insurance contained provisions which made it void because of the fraud practiced by Billings in obtaining same. It contained what is known as the "Loss Payable Clause," and also what is known as the "Standard Mortgage Clause," or "Union Mortgage Clause." However, under the section in the policy which provided for an election between these two clauses, it was stated that the "Loss Payable Clause" was to govern. The distinction between these two clauses is aptly stated in the case of Prudential Insurance Company v. German Mutual Fire Insurance Company, 228 Mo. App., 139, 60 S. W. (2d) 1009.

The Court of Civil Appeals has certified to the Supreme Court two questions as follows:

"(1) Did the act of fraud perpetrated before the policy was issued, by M. R. Billings in concealing the existence of the conspiracy to burn the furniture after it was insured, invalidate the insurance of the appellee, who was the mortgagee?

"(2) Was the knowledge of the fraud and conspiracy

possessed by M. R. Billings, whom appellee had required to secure a policy of fire insurance on the furniture as additional security for his debt, imputable to the appellee, who was the mortgagee?"

In the case of Bremen Fire Insurance Company v. Ruddell, 37 Texas Civ. App., 30, 82 S. W., 826, it was held that a policy stipulating that same would be void in case of fraud upon the part of the insured in obtaining same, and containing a clause to the effect that the loss, if any, should be payable to the mortgagee as his interest might be, was void both as to the mortgagee and mortgagor. That opinion seems to be in accord with the general rule recognized in many states where there is no statute governing the matter. That decision would probably control here, but for the fact that the matter is governed by Article 4931 of the Revised Statutes of 1925. This article is as follows:

■ "The interest of a mortgagee or trustee under any fire insurance contract hereafter issued covering any property situated in this state, shall not be invalidated by any act or neglect of the mortgagor or owner of said described property or the happening of any condition beyond his control, and any stipulation in any contract in conflict therewith shall be null and void."

This article became a part of the contract of insurance as a matter of law and controlled the inconsistent provisions of the policy. Camden Fire Insurance Company v. Clayton & Company, 298 S. W., 451; writ of error denied in a written opinion, 117 Texas, 414, 6 S. W. (2d) 1029. Thus, by virtue of the statute, the "Union Mortgage Clause" automatically became a part of the policy in question and superseded the "Loss Payable Clause."

■ While it has frequently been held that under the statute a policy of insurance is not void as to the mortgagee for acts of the mortgagor subsequent to the issuance of the policy, even though made void by such acts as to the mortgagor, yet we do not find that our courts have had occasion to determine whether or not under the statute a policy would be void as to the mortgage on account of fraud by the mortgagor in procuring the policy. However, practically the unanimous weight of authority in other jurisdictions is to the effect that when a policy of insurance contains a clause to the effect that the insurance shall not be invalidated by any act or neglect of the mortgagor or owner, whether expressly written into the policy

or incorporated therein by virtue of law, the mortgagee, in case of loss, is protected against any act or neglect of the mortgagor of which the mortgagee is ignorant whether prior or subsequent to the issuance of the policy. This rule is based on the ground that such a clause constitutes an independent contract between the insurer and the mortgagee covering the mortgagee's insurable interest, and not merely the property, and is affected only by acts of the mortgagee himself. Joyce on Insurance, Volume 4, page 4776, section 2795; Laurenzi et al. v. Atlas Insurance Company, 131 Tenn., 644, 176 S. W., 1022, and authorities cited; Burgess v. Insurance Company of Penn., 224 S. W., 96; Fayetteville Building & Loan Association v. Mutual Insurance Company, 105 W. Va., 147, 141 S. E., 634, and authorities cited; Union Trust Company v. Philadelphia Insurance Company, 127 Me., 528, 145 Atl., 243, and authorities cited.

The leading American case is that of Syndicate Insurance Company v. Bohn, 65 Fed., 165, 27 L. R. A., 614, opinion by Judge Sanborn. Discussing policies containing the "Union Mortgage Clause," the substance of which is incorporated into our statute, the court said:

"When this mortgage clause was attached to the policies in suit, it had been introduced and generally adopted by insurance companies and mortgagees to secure indemnity to the latter. The purpose of its introduction and adoption had been to protect that indemnity against every act and neglect of the mortgagors, whether prior or subsequent to the issue of the mortgage indemnity clause. Ten years before, the highest judicial tribunal of the state of New York had declared that a mortgage clause which contained these provisions accomplished that purpose, and every court whose attention had been called to the question had approved that decision. Under these circumstances, the mortgagee and the insurance companies in these cases selected a mortgage clause that contained these identical provisions, and made it their contract. The inference is irresistible that they intended to, and that they did thereby, agree that no act or neglect of the mortgagors, unknown to the mortgagee, whether prior or subsequent to the date of this contract, should avoid it."

As this clause had by almost unanimous judicial decision been so construed for years prior to the adoption of what is now Article 4931, we are convinced that the legislature intended to give it this meaning.

Both questions propounded by the Court of Civil Appeals are answered in the negative.

Opinion adopted by the Supreme Court March 18, 1936.