**PEARSON v. RAPSTINE et al.**
No. 14141.

United States Court of Appeals
Fifth Circuit.
April 10, 1953.

Rehearing Denied May 6, 1953.

E. Byron Singleton, Singleton & Trulove, Amarillo, Tex., for appellant.

Guy Hardin, Shamrock, Tex., John R. Fullingim, Amarillo, Tex., Thos. L. Wade, J. B. Maguire, Jr., Curtis Douglass and Henry Gilchrist, Curtis Douglass and J. B. Maguire, Pampa, Tex., Smith, Teed, Wade & Waters, Pampa, Tex., for appellees.

Before HOLMES, RUSSELL and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This appeal is from a judgment below holding that a state court decree foreclosing a chattel mortgage is binding upon the trustee in bankruptcy of the mortgagor.

314

On or about October 1, 1949, appellee Frank Rapstine sold and delivered his bakery business to Clifton B. Estes, taking as a part of the purchase price Estes' note for $10,000, payable in monthly installments of $85 each, secured by a chattel mortgage on the property conveyed and all after acquired property of the bakery business. The property conveyed included supplies valued at $3700. intended for manufacture into bakery products. Estes was required to, and did, procure an insurance policy in amount of $10,000, dated March 19, 1950, containing a loss payable clause to Rapstine, as his interest might appear. The mortgage was duly recorded in the public records.

On December 23, 1950, the bakery was extensively damaged by fire. The insurer acknowledged its liability for the face of the policy, $10,000, made up of damage to equipment $2500, loss of merchandise $2000, and loss or damage to supplies used in the manufacture of bakery products $5500. Most, if not all, of the supplies on hand at the date of the sale had been used up and replaced by newly purchased supplies prior to the fire.

On February 26, 1951, although no monthly payments were then in default, Rapstine commenced suit in a Texas state court to accelerate the payments on the note and foreclose the mortgage lien, on the ground that the fire damage rendered the mortgage lien insecure, Estes being insolvent. On May 18, 1951, the state court orally granted the relief sought by Rapstine, and ordered the insurance company to pay him $9621.21 of the proceeds of said policy. The state court judgment was formally docketed on June 1, 1951. There was no appeal.

On the latter day, June 1, 1951, and perhaps before the state court judgment was formally entered, though it had been previously pronounced in open court on May 18, 1951, Estes filed a voluntary petition in bankruptcy, upon which he was adjudicated bankrupt on June 4, 1951.

The trustee, Perry S. Pearson, appellant here, on September 15, 1951, instituted a summary proceeding before the referee, attacking the state court judgment as a "void and fraudulent" preference as against other creditors, praying that it be set aside. See sec. 67, sub. a(1, 4) of the Bankruptcy Act as amended in 1938, 11 U.S.C.A. § 107, sub. a(1, 4).[1]

The referee largely granted that relief, holding that Rapstine was entitled to $2500 of the insurance proceeds, representing damage to equipment, and to the additional sum of $1600 received from the sale of the damaged equipment, but that the balance of the insurance proceeds, $7500, represented the value of goods "daily exposed to sale" in the regular course of business, which could not be made the subject of a chattel mortgage, Art. 4000,[2] Vernon's Tex. Civ.Stat., and was therefore a part of the bankrupt's estate, subject to the claim of general creditors. The referee also found that Rapstine had estopped himself by his conduct after the fire.

On petition to review, the district judge reversed the referee, holding that the state court judgment was binding as *res judicata*, and that the referee's finding that the mortgage was invalid because contrary to Art. 4000, supra, was erroneous. This order of the district judge is here for review.

In Texas, a chattel mortgage upon after acquired personal property is valid where it is clear that the parties contem-

1. "(1) Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this title by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) * * *. (4) The court shall have summary jurisdiction of any proceeding by the trustee or debtor, as the case may be, to hear and determine the rights of any parties under this subdivision a. * * *"

2. Effective April 19, 1949, Art. 4000, supra, was amended by adding thereto the following: "* * * and further provided that this Article shall not apply to any mortgage, deed or (of) trust or other form of lien given to secure the purchase price of any such goods, wares or merchandise, * * *."

plated that such property would be acquired by the mortgagor and the mortgage sufficiently identifies the property. Richardson v. Washington, 88 Tex. 339, 31 S.W. 614; Lawson v. First Nat'l Bank of Rotan, Tex.Civ.App., 150 S.W.2d 279. We agree with the district judge that the chattel mortgage here involved satisfies this rule, and more than four months prior to bankruptcy created a valid lien upon the after acquired supplies which replaced those on hand when the mortgage was executed.

 The lien held by the mortgagee did not originate with the state court decree entered on June 1, 1951. That decree simply enforced a preexisting lien dating from October 1, 1949 when the mortgage was executed, and a contract right dating from March 19, 1950, when the insurance policy was issued. The lien enforced by the state court was therefore not one "obtained" within four months of bankruptcy, as contemplated by sec. 67, sub. a of the Bankruptcy Act.

Moreover, Rapstine's interest in the insurance proceeds did not arise from the mortgage alone. He occupied a stronger position than a mere lien holder. The insurance policy was a contract not only between the insurer and the assured, Estes, but also between the insurer and the mortgagee, Rapstine, to whom the proceeds were payable as the latter's interest might appear. Camden Fire Ins. Co. v. Harold E. Clayton & Co., 117 Tex. 414, 6 S.W.2d 1029; Georgia Home Ins. Co. v. Golden, 127 Tex. 93, 91 S.W.2d 695. Rapstine's potential rights under the policy were created March 19, 1950, when the policy was issued. They became fixed and determinable on the date of the fire, December 23, 1950, and were measured by the sums then unpaid on the mortgage note. Both these dates were more than four months prior to the filing of the petition in bankruptcy on June 1, 1951. The state court decree entered on that date, but pronounced on May 18, 1951, simply enforced those rights.

The district court correctly held that the state court decree was *res judicata*, and that it was not a voidable preference

under sec. 67, sub. a of the Bankruptcy Act, from which it follows that the mortgagee is entitled to receive the sum of $9621.21 of the insurance proceeds, as awarded him by the state court. Metcalf v. Barker, Trustee, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122; In re Cherokee Pub. Serv. Co., 8 Cir., 94 F.2d 536; Mulhern v. Albin, 8 Cir., 163 F.2d 41; In re Baumchen, D.C., 97 F.Supp. 1005.

As Art. 4000, Vernon's Tex.Civ. Stat., since the amendment effective April 19, 1949, no longer applies to chattel mortgages given "to secure the purchase price", it is no objection that some of the mortgaged property may have been goods "daily exposed to sale".

Affirmed.