## CIRCUIT COURT OF THE CITY OF NORFOLK

Associates Financial
Services of Am., Inc.

v.

Allstate Ins. Co.

October 5, 2001

Case No. (Law) L00-2025

BY JUDGE CHARLES E. POSTON

This case comes before the Court for trial on stipulated facts. For the reasons discussed below, the Court grants judgment to the plaintiff.

Oscar R. Wachter purchased a residence at 13484 Rock Lane in Milford, Virginia, and he executed a deed of trust on this property to secure the purchase loan he obtained from Associates Financial Services of America, Inc. ("Associates"). At about the same time, Wachter applied to Allstate Insurance Company for a homeowner's policy covering the property. In the policy application, dated June 12, 1997, Wachter denied that he had suffered fire losses within the past five years. In fact, a dwelling he owned in Spotsylvania County, Virginia, had been the scene of fires on February 10, 1996, and April 19, 1996. Both fires fell within the definition of fire loss contained in the Allstate policy application.

The parties admit that Wachter's failure to disclose the two fire losses constituted a material misrepresentation by Wachter and rendered the policy void *ab initio* as to Wachter. The parties further agree that Allstate would not have issued the policy but for Wachter's fraud. However, the homeowner's policy also contained a "union mortgage clause" giving Associates certain rights even in the event of Wachter's malfeasance. This clause states:

> Loss shall be payable to the mortgagees named on the declarations page [Associates], to the extent of their investment and in the order

of precedence and all the provisions of this policy apply to these mortgagees.

We [Allstate] will:

(a) protect the mortgagee's interest in an insured building in the case of any act or neglect of the mortgagor, increase in hazard, change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions.

(Bracketed words added.)

A fire broke out at the Rock Lane property on September 6, 1998, heavily damaging the property. The Allstate policy was in effect at the time of the loss, and Allstate declared the property a total loss. The parties agree that, if Associates is entitled to recover under the policy, the amount of its recovery should be $53,000.

Associates demanded payment from Allstate in the amount of $53,000. Allstate refused to pay. Associates responded by filing suit against Allstate on September 6, 2000, praying for the award of $53,000 plus pre-judgment interest. After discovery and briefing by both parties, the case now comes for resolution on stipulated facts.

*Discussion*

A. *Insurer's Liability to Mortgagee*[1]

So far as the Court can discern, this is a case of first impression in Virginia. A provision in a homeowner's insurance contract requiring the insurer to pay the mortgagee regardless of any act of the mortgagor is called a union mortgage clause. The Virginia Supreme Court has held that union mortgage clauses do not violate public policy. *Wagner v. Peters*, 142 Va. 142, 128 S.E.2d 1445 (1925). Any act of the mortgagor occurring *after* the issuance of a policy containing a union mortgage clause cannot defeat the mortgagee's claim. *New Brunswick Fire Ins. Co. of New Brunswick, N.J. v. Morris Plan Bank of Portsmouth, Va.*, 136 Va. 402 at 407, 408, 118 S.E. 236 at 237, 238 (1923). However, no Virginia Supreme Court case dictates whether an insurer is liable on a policy which contains a union mortgage clause when the policy would not have been issued but for the fraud of the

---

[1] There was, of course, no "mortgage," since Virginia typically prefers securing real estate transactions with deeds of trust. For convenience sake, however, terms such as "mortgagee" are used.

mortgagor during the insurance application process. This question, however, has been frequently litigated in sister states. In these states, it is well settled that no wrongful act of the mortgagor, whether prior or subsequent to the issuance of an insurance policy containing a union mortgage clause, can vitiate the right of the mortgagee to recover.

A union mortgage clause is, in essence, a separate contract between the insurer and mortgagee, which cannot be defeated by any act of the mortgagor, regardless of whether this act occurs before or after the issuance of the policy. The words "any acts" contained in a standard union mortgage clause are construed literally and encompass not only breach of the insurance policy itself but literally any act the mortgagor could possibly perform. *Couch on Insurance* (Third Ed.), § 65:48.

Typical of the panoply of cases holding that a mortgagor's fraud does not defeat the mortgagee's right to recover under a union mortgage clause is *Fayetteville Bldg. & Loan Ass'n v. Mutual Fire Ins. Co.*, 105 W. Va. 147, 141 S.E. 634 (1928). In this case, a mortgagor fraudulently obtained fire insurance from the defendant. The mortgagor fraudulently represented that his house was within thirty-five yards of a fire hydrant when the actual distance to a fire hydrant was approximately one and one half miles. The policy contained a union mortgage clause specifying that the proceeds of the policy would be payable to the mortgagee and that the mortgagee's right to recover would not be invalidated by the "act or neglect" of the mortgagor. After discussing authorities from other states, the West Virginia Supreme Court held that "the defendant insurance company cannot defeat the action of the [mortgagee] by setting up the alleged fraudulent representations made by the mortgagor . . . in the absence of evidence tending to show the mortgagee had knowledge of such statement." *Id.* at 154, 141 S.E. at 636. The Supreme Court of West Virginia has reaffirmed *Fayetteville* as recently as 1995. In *Jones v. Wesbanco*, 194 W. Va. 381, 460 S.E.2d 627, the West Virginia Supreme Court held that a union mortgage clause created a separate contract between the insurer and the mortgagee and that this independent contract could not be invalidated by any unilateral act of the mortgagor.

Many other courts have reached the same conclusion. *See e.g. Union Trust Co. v. National Fire Ins. Co.*, 127 Me. 528, 145 A. 243 (1929); *National Union Fire Ins. Co. v. Short*, 32 F.2d 631 (6th Cir. 1929); *Norwest Mortgage, Inc. v. Nationwide Mutual Fire Ins. Co.*, 718 So. 2d 15 (Ala. 1998).

Allstate's attempt to distinguish *Fayetteville* and its successors from the instant case is an exercise in futility. Allstate claims that in *Fayetteville* the insurance company would merely have charged a higher premium had the

mortgagor told the truth, whereas, in the instant case, Allstate would not have insured Wachter under any circumstances had it known of the fires at his Spotsylvania property. Allstate's claim is belied by a careful reading of *Fayetteville*. No where in *Fayetteville* does the West Virginia Supreme Court state that the mortgagor could have obtained an insurance policy had it told the truth. If this fact were important to the West Virginia Supreme Court's *ratio decidendi*, it would be clearly stated in the opinion. Furthermore, Allstate's attempt to distinguish *Fayetteville* and its successors turns a blind eye to the logic of these cases. The holding in *Fayetteville* has nothing to do with the difference between the actual amount of risk and the amount of risk implied by the mortgagor's representations. Rather, the court reached its conclusion on the grounds that the union mortgage clause created a separate contract in favor of the mortgagee and that, under the language of the policy, this contract could not be defeated by any act of the mortgagor. *Fayetteville v. Mutual*, 105 W. Va. 147, 150, 141 S.E.2d 634, 636.

*Fayetteville* represents the overwhelming view of American courts that have examined the issue posed by the instant case. *Couch on Insurance* does not cite any valid precedents with contrary holdings, nor has the Court's own research revealed any such cases. *See e.g. Couch on Insurance* (Third Ed.) § 65:48. Allstate cites *Hanover Fire Ins. Co. v. National Exchange Bank*, 34 S.W. 333 (Tex. 1896), for the proposition that, when a mortgagor fraudulently conceals material facts from an insurer, the mortgagee, however innocent, cannot recover from the insurer. However, the holding in *Hanover Fire* appears no longer to be valid. Because the Supreme Court of Texas adopted a contrary holding in *Georgia Home Ins. Co. v. Golden*, 127 Tex. 93 (1936). In *Georgia Home*, the plaintiff purchased insurance subject to a mortgage interest held by the seller. The plaintiff obtained a policy insuring the furniture against loss from defendant insurance company. At the time of the purchase, the plaintiff knew a conspiracy existed to destroy the furniture, but the mortgagee had no knowledge of the conspiracy. The Texas Supreme Court held that, because the policy provided that any loss would be payable to the mortgagee, the mortgagor/owner's concealment could not invalidate the insurer's obligation to pay the mortgagee. The court relied primarily on a Texas statute enacted subsequent to *Hanover Fire*, which provided:

> The interest of a mortgagee or trustee under any fire insurance contract hereafter issued covering any property situated in this state, shall not be invalidated by any act or neglect of the mortgagor or owner of said described property. . . . *Texas Revised Statutes of 1925*,

Art. 4931, *cited in Georgia Home Ins. v. Golden* 127 Tex. at 95 (1936).

The Texas Supreme Court also noted that:

> practically the unanimous weight of authority in other jurisdictions is to the effect that when a policy of insurance contains a clause to the effect that the insurance shall not be invalidated by any act or neglect of the mortgagor or owner . . . the mortgagee, in case of loss, is protected against any loss of which the mortgagee is ignorant whether prior or subsequent to the issuance of the policy.

*Id.* at 96.

Allstate's contention that "Associates is trying to reward itself for the fraudulent acts of its mortgagor" (Brief for Defendant, p. 4) is without merit. The well established practice of the mortgage banking industry is to not issue mortgage loans unless the mortgaged property is insured. Thus, Associates in no way benefited from Wachter's fraud. But for Wachter's fraud, Associates would have never made Wachter a mortgage loan and would have been spared the expense and uncertainty of this litigation. To say Associates "benefited" by issuing a mortgage that has entangled it in three years of litigation with Allstate defies logic. The plain meaning of Wachter's homeowner's policy dictates the same result as *Fayetteville*. Insurance policies are contracts whose terms must be interpreted in accordance with general principles of construction. *Dairyland Ins. Co. v. Douthat*, 248 Va. 627, 449 S.E.2d 799 (1994). The words and phrases in an insurance contract should be given their usual and ordinary meaning. *London Guarantee & Acc. Co. v. C. B. White & Bros.*, 188 Va. 195, 49 S.E.2d 254 (1948). Wachter's homeowner's policy explicitly and unambiguously states that Allstate will protect the mortgagee's interest in the property despite "any act" of the mortgagor. *Supra.* Under the language of the policy, no act, serious or trifling, intentional or negligent, pre-issuance or post-issuance, can vitiate Associate's right to recover from Allstate.

The court therefore holds that a mortgagee's right to recover under an insurance policy containing a union mortgage clause is not vitiated by the pre-issuance fraud of the mortgagor when the mortgagee had no knowledge of the fraud. As an innocent mortgagee named as the beneficiary of a union mortgage clause, Associates is entitled to judgment against Allstate in the amount of $53,000.

B. *Pre-judgment Interest*

Whether to award pre-judgment interest lies in the discretion of the finder of fact. Code of Virginia § 8.01-382. The equities of this case furnish the Court with strong reason to award pre-judgment interest. Though the Virginia Supreme Court has not directly addressed whether an innocent mortgagee may recover from an insurer despite the mortgagor's fraud, the overwhelming weight of authority from sister states favors the mortgagee. The Code of Virginia does not require a court to find a defendant's case frivolous or insubstantial to award pre-judgment interest. Associates should not suffer from the delay occasioned by Allstate's attempt to persuade Virginia courts to buck the national trend. Thus, the equities of the case supply strong reason to award Associates pre-judgment interest.

Furthermore, there are sound economic reasons for awarding pre-judgment interest. A dollar today is worth more than a dollar tomorrow and $53,000 paid in 1998 would have been more valuable to Associates than $53,000 paid in 2001. In making financial decisions, corporations typically discount future cash flows to reflect the time-value of money. Through litigating this issue, Allstate has postponed payment of its obligations to Associates by approximately three years. Had Allstate made timely payment, Associates would have had three years to invest the $53,000 owed by Allstate and, even investing the money conservatively, could have realized a substantial return.

## Conclusion

For the foregoing reasons, the Court awards Associates judgment against Allstate in the amount of $53,000 with pre-judgment interest assessed from September 6, 1998, plus taxable costs.