Hillsborough,
Jan. 7, 1936.

MERRIMACK RIVER SAVINGS BANK & a.

*v.*

THE LONDON ASSURANCE CORPORATION.

SAME *v.* UNITED STATES FIRE INSURANCE COMPANY.

*McLane, Davis & Carleton* and *Albert H. White* (*Mr. Carleton* orally), for the plaintiffs.

*Thorp & Branch* (*Mr. Thorp* orally), for the defendants.

ALLEN, C. J.   Liability is denied on the ground that the insurers, in an exercise of their right of subrogation set forth in the union mortgage clause, were entitled to receive the mortgage security in the character it had when the expired policies were issued.   The mortgages were extinguished by the proceedings in connection with the tax sale and deed, and were revived upon the reconveyance of the property to the mortgagor through the operation of estoppel.   *Kezer* v. *Clifford,* 59 N. H. 208.   No rights of third parties had intervened to affect the standing of the mortgages other than of the grantee of the tax deed, and its deed to the mortgagor eliminated its rights. But it is said that the promises of the policies to the mortgagees are independent of those to the mortgagor and are supported as to consideration by the mortgagees' agreement to transfer the security, in the event of the exercise of subrogation, in the identical form and character it had when the expired policies were issued.   It is claimed that a mortgage of the owner's title and one valid only through estoppel against the owner are different securities, and that a promise to transfer the former is not fulfilled by a transfer of the latter, although both may be equal in value and enforceability.

When the policies in suit were issued, the mortgages of title had become lost, and they were then enforceable only under estoppel. The insurers, however, would seem to claim that promises of title were given in the policies because the policies extended the term of

expired policies which were issued when the mortgages were of title; they say that, having no notice of any change in the title, they were promised that the title originally existing continued intact.

The insurers' position rests upon a fallacious premise respecting the consideration for their agreement with the mortgagees contained in the union mortgage clause. Although it be regarded that the agreement is separate from that with the owner, the premium paid for the policy is the consideration for both agreements. The entire amount of insurance, however, and on what terms it is divided by the policy between owner and mortgagee, is paid for by the premium. For the premium a single amount of insurance is promised, to be paid upon a loss towards satisfaction of the mortgage debt and the balance after such satisfaction to the owner. "Here the premium was paid by the owner or on his behalf, but the insurance company received it as consideration for its double undertaking to the owner and to the mortgagee." *Smith* v. *Insurance Co.*, 25 R. I. 260. See also *Critchlow* v. *Association*, 198 Ia. 1086.

The view has been taken that the union mortgage clause has a special consideration for its validity. *Union Trust Co.* v. *Insurance Co.*, 127 Me. 528. It is not considered to be sound. The policy does not so read. The premium is stated to be the consideration for the insurance, and the evident meaning is that it refers to all the insurance the policy furnishes and upon all the terms and conditions of the policy. The premium is determined by the amount of insurance and the policy period, and is not affected by the relative interests of the owner and the mortgagee. The extent of the mortgage interest is a matter of indifference to the insurer when it issues a policy. There is no premium rebate when a policy is amended during its term by provision for payment of insurance to a mortgagee.

Moreover, the policy shows no agreement by the mortgagee. The protection to him under the union mortgage clause is expressed to be upon stated conditions. He has his choice of compliance or refusal. If he refuses, he loses the benefit of the clause. The clause takes care of the mortgagee when the policy is void as to the owner, but the care is dependent on specified action of the mortgagee. He is protected if he sees fit to avail himself of the protection by doing what the policy says he must do to obtain it. But he has not bound himself to observe the conditions.

Nor, when a policy containing the union mortgage clause insures a mortgagee's interest, is the mortgagee, by the mere issuance of the policy, held to represent to the insurer that his mortgage will remain

unchanged in force, validity or character. He may release part of his security or permit other liens to precede his without disturbance to his insurance. There is no promise on his part not to weaken or lessen the value of the security, in the mere fact of insurance of his interest or of the insurer's reserved right of subrogation. " ... although the plaintiffs' position may be analogous in some respects to that of a surety, their rights and duties are defined by the terms of the insurance contract ...." *Fidelity &c. Co.* v. *Brennan, supra,* 295. See also *Guaranty Trust Co.* v. *Company,* 79 N. H. 480, 481. The policies neither express nor import the right claimed. To require that the mortgage security be held intact so that if the insurer elects to buy it with the mortgage debt, the security as it existed when the insurance was issued may be demanded, would be contrary to business understanding. No implied agreement therefor is to be found, nor does any principle of law or equity invoke the requirement. The insurer's right is to succeed to the mortgagee's position, whatever it may be at the time of the fire.

The union mortgage clause is of service only when the owner has lost his insurance under the policy. If his insurance is in force, the mortgagee's is equally so. So long as the policy is not avoided as to the owner, the mortgagee stands in the owner's right. Here, but for the unpermitted non-occupancy of the property at the time of the fire, the policies would have been in force as to the owner. His loss of ownership caused a loss of insurance only during the loss of ownership. The insurance was restored to him by the reconveyance to him of the property. To construe the union mortgage clause in such a manner as to produce a loss of the mortgagee's insurance which would not occur save for the owner's acts or omissions avoiding the policy as to him, would not be in maintenance of its "primary object ... to protect the mortgagee." *Fidelity &c. Co.* v. *Brennan, supra,* 292, 293. For the insurer to have a defence against him which would not be available without the owner's loss of insurance, is a result so incompatible with the spirit of the clause as to make preferable a construction of the policy preventing such result, if the doubts of the meaning of its language were serious.

The plaintiffs are entitled to judgments.

*Cases discharged.*

BRANCH, J., did not sit: the others concurred.

454

On Rehearing. After the foregoing opinion was filed the defendants moved for a rehearing.

*Thorp & Branch,* for the motion.

Allen, C. J. The ground assigned for the motion is that the estoppel against the mortgagor may not be employed to defeat the insurers' right to rely on the mortgagees' loss of title as a defence. They say there is no estoppel as to them.

The answer is that the estoppel was operative to revest the mortgage interest in the mortgagees, except as to intervening rights. (Hening's Digest 381.) That interest had been insured, and continued to be after its restoration. The insurers by their policies promised to pay the mortgagees in case of loss as the then mortgage interest might appear. They are now only required to perform their promises.

*Former result affirmed.*

Branch, J., did not sit: the others concurred.