Argued February 3, affirmed August 3, petition for rehearing
denied September 6, 1960

# MUCK ET AL *v.* IDEAL CEMENT COMPANY

354 P. 2d 821

*Norman N. Griffith,* Portland, argued the cause for appellants. With him on the briefs were James L. Conley, Fletcher Rockwood and Cleveland C. Cory, all of Portland.

*Louis F. Schultz,* Grants Pass, argued the cause for respondent. On the brief were Allen, Schultz & Salisbury, Grants Pass.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY and HARRIS, Justices.

PERRY, J.

This is a suit to quiet title to an unpatented mining claim located upon Lot 5, Section 30, Township 37 South, Range 6 West of the Willamette Meridian, in Josephine County, State of Oregon.

The trial court made findings of fact and conclusions of law and upon these entered a decree allotting plaintiffs a portion of the claim located at the west end of the lot and allotted the remainder of the claim to the defendant. Title to each parcel was quieted subject to paramount title in the United States. Plaintiffs appeal.

While there are other mining claims involved in this suit, this appeal is concerned only with a single claim which the record discloses was called by different locators "Black Hawk" and "Snow Flake No. 2." We will also in the course of the opinion refer to "Black Beauty" and "Snow Flake No. 1," which claims also cover a single surface location.

The plaintiffs' claim of title in and to the placer mining claim is based upon an entry and location made in 1940, and also upon adverse possession.

The defendant's claim of title is based upon a location made in 1906 by one Martin Conger to whose interest defendant, through a series of transfers, succeeded. Defendant also claims title by adverse possession.

The Martin Conger location upon which defendant relies was primarily located by Mrs. J. E. Verdin in 1902 and conveyed to William Knoell. Plaintiffs contend that the Conger location was invalid because the surface area was the same as the J. E. Verdin claim and was not open for location in 1906. Defendant contends the Verdin location was forfeited by failure of Knoell to do the required performance of annual labor or improvements (assessment work) under the mining laws in 1905, and therefore the claim was open for location by Conger in 1906. In reply, plaintiffs contend a quiet title suit brought in 1908 and decided

in 1926 determined that the J. E. Verdin location was not open for location when the attempted location by Conger was made since upon that claim "William Knoell had done his necessary assessment work in the year 1905." Finally, it is alleged by plaintiffs that assessment work was performed on Snow Flake No. 2 by William Knoell's successors until 1940 when Knoell's grantees died and abandoned the claim and thus plaintiffs could peacefully enter in 1940 and file their location notice; that since plaintiffs have been in possession they have been doing all that was necessary to preserve their claim.

The trial court, after hearing the evidence, found Verdin's 1902 Black Hawk location void, first, because located as a lode rather than a placer mining claim, and, second, because the location notice failed to describe the claim by reference to a natural object or permanent monument. The trial court also found that no assessment was performed upon Black Hawk in 1905 and that it was open for location in 1906, and that Martin Conger located Snow Flake No. 2 placer mining claim January 10, 1906, upon ground approximating the location of Verdin's 1902 Black Hawk claim. Finally, it was determined by the trial court that the suit filed in 1908 was dismissed without prejudice as to Martin Conger and, therefore, the title to Snow Flake No. 2 was not in issue nor determined by that suit.

Upon these findings the trial court concluded as a matter of law that the land embraced within Snow Flake No. 2 was at the time of said location by Martin Conger in 1906 vacant public mineral lands of the United States of America not in the actual possession of any other person; that said location by Martin Conger was a valid location under the mining laws

of the United States of America and of the State of Oregon, and is now, as successor of Martin Conger, the property of defendant, subject only to the paramount title of the United States of America; that the ground embraced thereby was not subject to location in the year 1940 by the plaintiffs. The trial court also found, if the Conger location was invalid, defendant established title by adverse possession to that portion of the claim lying east of a north-south line as shown on defendant's Exhibit V, and that "plaintiffs have established title by adverse possession to that portion of the 'Snow Flake No. 2' claim lying west of a north and south line drawn through that point on the ground shown by the red crayon mark in defendant's Exhibit V as introduced and received in this proceeding, and a prescriptive easement to that portion of said claim crossed by their roadway." A decree was entered accordingly.

Error has been assigned in thirteen instances. We deem it unnecessary to discuss each of these assignments of error for many refer to the alternative determinations in defendant's favor which although necessary to discuss in the briefs are not necessary to sustain the trial court's decree. For instance, plaintiffs assign as error the holding of the trial court that the location notice of Mrs. J. E. Verdin in 1902 was void. It is immaterial whether this location notice was valid or invalid in view of the fact that in our opinion her assignor forfeited his rights to this mining claim.

We will first consider the plaintiffs' contentions that the trial court erred in its conclusion of law:

"That the decision rendered in the suit filed in the Circuit Court of the State of Oregon for the

County of Josephine on December 17, 1908 entitled Martin A. Conger and Allen McCauley, plaintiffs vs. N. V. Sorenson, J.J. Cusack and Charlotte M. Cartwright, James B. Cartwright, Effie J. Van Houten and Edith M. Mosier, heirs at law of Charles M. Cartwright, deceased is not res judicata or stare decisis in so far as the instant suit is concerned and the decision rendered therein does not in any way bind the Court in this proceeding."

The record discloses that in December, 1908, Martin A. Conger and Allen McCauley jointly filed a suit against N. V. Sorenson et al., to quiet title to Snow Flake No. 1 and Snow Flake No. 2. The named defendants were the successors in interest of William Knoell. The record further discloses that Allen McCauley had relocated his Snow Flake No. 1 on a claim originally located by Verdin which she called "Black Beauty," and Martin A. Conger had located upon Snow Flake No. 2, another claim originally located by Verdin and which she called "Black Hawk." Defendants in that suit filed a demurrer to plaintiffs' complaint. On the 10th day of June, 1925, upon the motion of Martin A. Conger, the suit was dismissed as to the claim of Martin A. Conger. On June 30, 1925, Allen McCauley filed what is termed an "Amended Complaint" alleging he was the owner of Snow Flake No. 1, no mention being made of Snow Flake No. 2. The record does not disclose the nature of defendants' answer, but the trial court made findings of fact and conclusions of law in which it found that there had been no forfeiture by William Knoell of Snow Flake No. 1. A decree was entered for the defendants Sorenson et al. that Allen McCauley and the Portland Beaver Cement Company, who had contracted with McCauley to purchase Snow Flake No. 1, had no right, title or interest in this claim. Snow Flake No. 2 was not mentioned in the decree.

The plaintiffs in the suit before us argue that since McCauley filed his location notice upon Snow Flake No. 1 the same date that Conger filed his location notice upon Snow Flake No. 2 there was a community of interest in the properties, and that the decree determining Knoell had performed his assessment work in 1905 on Snow Flake No. 1 was proof there was no forfeiture by Knoell of his assessment work on Snow Flake No. 2.

The answer to this contention is that Snow Flake No. 2 was not the subject of the litigation involving Snow Flake No. 1 and any evidence offered with regard to Snow Flake No. 2 was wholly immaterial to the determination of the issues presented and determined by the trial court.

■ Each party urges that the burden of proof as to whether or not assessment work was done in the year 1905 rests with the other. Since defendant, in order to sustain the validity of its location, pleads forfeiture of a prior location, it assumes the burden of proving the same. *Kramer v. Taylor et al. and Trickel,* 200 Or 640, 266 P2d 709; *Schlegel v. Hough,* 182 Or 441, 186 P2d 516, 188 P2d 158.

■■ No affidavit was produced to show the assessment work was done, but this omission alone would be insufficient to cause a forfeiture under the rule announced in *Schlegel v. Hough,* supra, 182 Or 441, 444, where this court said:

"Defendant established the fact no proof of performance of assessment work for the year ended July 1, 1944, was filed. Under the statute this was *prima facie* evidence that the work was not done. * * * We think, however, that mere *prima facie* evidence was not sufficient to comply with the rule

requiring evidence of forfeiture to be clear and convincing. 20 Am Jur, Evidence, sections 1251, 1252, 1253."

■ In this case, as is pointed out later herein, there was other evidence of Knoell's failure to perform his assessment work in 1905, and the only evidence to off-set this proof is that Knoell did assessment work out-side the boundaries of Snow Flake No. 2. The rule then is that the burden shifts to the plaintiffs to show that the assessment work on Snow Flake No. 1 bene-fited Snow Flake No. 2.

" '* * * Where a party shows that no work was performed by his adversary within the limits of a claim he makes out a prima facie case, and thereafter, should such adversary depend upon labor done outside the claim, the burden is cast upon him of proving the performance of such labor and proving that its reasonable tendency is to bene-fit the claim. 2 Lindley on Mines (3d Ed.), sec. 643.' " *Oliver v. Burg,* 154 Or 1, 17, 58 P2d 245.

See also *Kramer v. Taylor et al. and Trickel,* supra.

■ The record in the case now before us shows that no affidavit was filed of record or produced that Wil-liam Knoell had done any assessment work on Snow Flake No. 2 in 1905. The record does show that Em-mett Conger, a brother of Martin Conger, who lived on the road leading to the claim, stated that he was well-acquainted with the location of this William Knoell's claim; that he was on the claim when it was relocated by his brother in January, 1906, and that from the ap-pearances then present he could state no assessment work had been done for the year 1905. It is quite evi-dent from the record that the trial court had great confidence in the truth of the statements of this witness and we are not in a position, from the record, to say the trial court was in error.

While it is true that the showing of failure to file an affidavit of proof of assessment work is not in itself sufficient "to comply with the rule requiring evidence of forfeiture to be clear and convincing," *Schlegel v. Hough,* supra, the testimony of Emmett Conger that none in fact was done supplies any deficiency in that respect.

Charles W. Reames, one of the attorneys representing the successors in interest of William Knoell in the litigation between these successors in interest and Allen McCauley, with reference to the title to Black Beauty, also known as Snow Flake No. 1, testified that in that suit William Knoell testified he had a number of claims in the year 1905 "that the work was done on the one claim Black Beauty for the benefit of all."

The Snow Flake No. 2 claim was not in litigation in that suit. Therefore, it was not necessary to establish the fact that the work performed on Snow Flake No. 1 redounded to the benefit of Snow Flake No. 2, even if it can be said under the statement of single individual ownership the quarrying of limestone from one claim can be said to benefit another. 2 Lindley on Mines, 3rd ed, § 630, p 1556. Therefore, even if we accept the evidence that William Knoell did assessment work on Snow Flake No. 1, there is absolutely no evidence that this work tended to benefit Snow Flake No. 2.

■ Since there was a forfeiture of Snow Flake No. 2 by failure to perform the assessment work in 1905, the property was open for relocation by Martin Conger in 1906. 30 USCA 147, Mineral Lands and Regulations § 28.

The plaintiffs also contend the trial court erred in its findings of fact No. 11:

"That the defendant herein is the successor in interest to the title of Martin Conger in and to the 'Snow Flake No. 2' mining claim; that since the date of location of said claim defendant and its predecessors in title have performed annual labor thereon of a value of not less than One Hundred Dollars ($100.00) and have caused proof thereof to be recorded in the Mining Records of Josephine County, Oregon, excepting only such years as such labor requirements were suspended."

And plaintiffs made written objection to said finding as follows:

"Plaintiffs object to proposed Finding No. 11 upon the ground and for the reason that it is not in accordance with the evidence with respect to the performance of annual labor on the claim involved for each and every year after the attempted Conger location after excluding those years in which annual labor thereon was excused."

It does not clearly appear from the briefs whether the objection is made for the purpose of destroying defendant's claim of ownership on the basis of adverse possession or to establish the fact that in 1940 when plaintiffs relocated the mining claim the rights of the defendant had been forfeited.

It is unnecessary to consider the matter as affecting defendant's rights arising from adverse possession since, as before pointed out, we are of the opinion that defendant's title is established as successor to the rights of Martin Conger.

■ As to plaintiffs' right to relocate, should we assume that in several years subsequent to 1906 and prior to 1940 there was a failure in some of those years to

perform the annual assessment work or that defendant's affidavits for relief from assessment work as had been provided by the laws of the United States were faulty, this assumption would not aid the plaintiffs' cause. The evidence in the record discloses that in the years 1938, 1939 and 1940 there was assessment work performed by defendant. Therefore, in 1940 the claim was not open to relocation by the plaintiffs. *Crown Point Min. Co. v. Crismon,* 39 Or 364, 65 P 87.

■ The sole question remaining is whether or not the trial court correctly determined the plaintiffs were entitled to a portion of the west end of the claim. The defendant did not cross-appeal from that portion of the decree which granted this portion of the claim and easement to the plaintiffs. Defendant is, therefore, deemed satisfied with the decree. *Flaherty v. Bookhultz et al.,* 207 Or 462, 291 P2d 221, 297 P2d 856; *Mathews v. Chambers Power Co.,* 81 Or 251, 159 P 564.

The decree of the trial court is affirmed.

Neither party shall recover costs.