**Brita Violet Hanson LITTLEFIELD**
**a/k/a Violet H. Littlefield**

v.

**Clayton O. LITTLEFIELD.**

Supreme Judicial Court of Maine.

June 30, 1972.

1. Commonwealth v. Tuey, 8 Cush. (Mass.) 1; Allen v. United States (1896) 164 U.S. 492, 41 L.Ed. 528, 17 S.Ct. 154 (approving the Tuey charge).

Eaton, Glass, Marsano & Hammond by Francis C. Marsano, Belfast, for plaintiff.

Grossman, Faber & Miller "P.A." by A. Alan Grossman, Barry M. Faber, Rockland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY and WERNICK, JJ.

WEATHERBEE, Justice.

This complaint for divorce in which the Plaintiff wife is also seeking custody of the minor child, support, alimony, and counsel fees, was heard before a Judge of the District Court. After hearing the testimony of the Plaintiff, the Court found that there was a ground for divorce "in the physical abuse and resulting physical suffering and mental anguish visited upon the Plaintiff by the actions of the Defendant" but dismissed the complaint because the Court also found condonation as a result of occasional instances of sexual intercourse between the parties while the suit for divorce was pending.

The Plaintiff was the only witness heard in the District Court. She testified to numerous acts of physical violence upon her by her husband during the eleven and a half years of their marriage which culminated in her bringing the present action. She said that while she and her husband were living apart and while her complaint for divorce was awaiting hearing in the District Court, she went three or four times to their camp where her husband was staying. She testified, on cross-examination:

"A  Well, I went up to the camp with the idea of trying to come at some reasonable solution to our problems and settlement of all our difficulties—

.    .    .    .    .    .

Q  So during the month of July you saw your husband how many times?

A  Three or four times.

Q  Now, tell us what happened on these three or four times?

A  Well, we tried to talk about our problems, about the children, and we had a few drinks—

Q  Was it all a sociable evening?

A  I think that it was a sociable evening, yes.

Q  And then what happened, if anything?

A  Well, on a few of the occasions I stayed there with him.

Q  And when you stayed there with him will you tell the court what you had?

A  We had marital relations.

Q  How many times?

A  Three or four times, approximately.

Q  And that was during the month of July?

A  Yes.

Q  And when you—did you have relations more than once on a visit on each visit?

A  I don't recall exactly once possibly, twice possibly.

Q  Your husband didn't force you?

A  No.

Q  This was a mutual—

A  Yes, it was.

Q  —thing, and there were no promises made to one another?

A  No."

Upon being pressed to explain her willingness to engage in sexual intercourse with her husband in view of her professed desire to be separated from him, the Plaintiff said:

"There is more to marriage than just the physical part of marriage but that part of our marriage was always very satisfactory, I still have a physical attraction towards him."

The District Court Judge dismissed the Plaintiff's complaint, finding that the Plaintiff had sustained her burden of proving cruel and abusive treatment and that there was no recrimination but ruling that her three or four acts of sexual intercourse with her husband constituted condonation

which was a bar to her action for divorce. He said:

"The sexual relationship entered into without expressed reservations is a restoration of all marital rights, and is, therefore, condonation."

The Plaintiff's appeal was later considered on the record by a Justice in the Superior Court. The Justice held that the District Court Judge's finding that the Plaintiff had satisfactorily presented proof of cruel and abusive treatment was demonstrated by the record but that the Judge's conclusion that condonation existed which required dismissal of the complaint was based upon an erroneous application of law. The Justice granted the divorce and remanded the matter to the District Court for further proceedings concerning custody, support, alimony and counsel fees.

The Defendant's appeal presents three issues for our consideration:

1) Is the Defendant—not having cross-appealed—now entitled to attack the finding of the Judge that the Plaintiff had proved cruel and abusive treatment by the Defendant which would entitle her to a divorce?

2) Was the Judge in error in ruling that the undisputed testimony of the Plaintiff demonstrates condonation which is a bar to her action for divorce?

3) If the Judge's finding of condonation was erroneous, is the Defendant now entitled to present further evidence in defense in the District Court?

## THE RIGHT OF THE DEFENDANT APPELLEE TO ATTACK THE FINDINGS OF THE JUDGE ON PLAINTIFF'S APPEAL TO THE SUPERIOR COURT

Although the Judge denied Plaintiff's complaint for divorce he made a specific finding that cruel and abusive treatment had been proved. The Plaintiff appealed from the judgment denying the decree of divorce, claiming as error the Judge's finding of condonation. The Defendant—successful in that the judgment was in his favor—did not cross-appeal. (He did appeal later from the judgment of the Superior Court Justice and then assigned the finding of cruel and abusive treatment as a claimed error of the Justice.) He now urges us that the Judge was in error in finding that Plaintiff had proved cruel and abusive treatment and that the Justice was in error in holding, on appeal, that the record supported the Judge's finding.

The issue raised is one of novel impression under our rules. We are now required to construe our Rules of Civil Procedure and our District Court Civil Rules to determine for the first time what issues are available on appeal to the winning party who seeks only to protect the judgment in his favor but who has not cross-appealed.

M.R.C.P. Rule 73(a) supplies the proper procedure for filing cross-appeals to the Law Court and District Court Civil Rule 73 provides that

" . . . [I]f a timely notice of appeal is filed by a party, any other party may file a notice of appeal . . . "

Both rules provide machinery for cross-appeals but neither rule sets forth the circumstances under which the appellee *should* cross-appeal. Field, McKusick & Wroth, Maine Civil Practice, § 73.10 makes this analysis of the situation:

" . . . The federal cases make it clear that the appellee, if he wishes to do more than defend the judgment on any ground available on the record, must file a cross-appeal. Otherwise the appellee cannot on the appeal enlarge his rights under the judgment appealed from, or lessen the rights of the appellant thereunder. The Maine statute which previously declared the contrary rule in appeals of equity cases [1] was re-

---

1. R.S.1954, Chap. 107, § 21; Woodsum, et al. v. Portland Railroad Company, et al., 144 Me. 74, 88, 65 A.2d 17 (1949).

pealed in 1959, and thus the law declared by the federal cases (and also previously applied in Maine in actions at law) is now applicable generally on appeals. . . ." (Footnote added.)

Our section (e) is substantially the same in this respect as Federal Rule 74, which is now Rule 3(a) of the Federal Rules of Appellate Procedure. Professor Wright has described the construction which the Federal Courts have generally given their rule in this manner:

"The ancient doctrine can be simply stated, even if not so simply applied in every case. The appellee may, despite a failure to file a cross appeal, defend a judgment on any ground consistent with the record, even if rejected in the lower court. But he cannot attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary unless he files a cross appeal, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below." Wright, Federal Practice & Procedure; Barron and Holtzoff, Vol. 3A § 1572.

This analysis appears to be supported by the holdings in Abel v. Brayton Flying Service, 248 F.2d 713 (5th Cir. 1957); Kirby Lumber Corporation v. State of Louisiana, 293 F.2d 82 (5th Cir. 1961); United States ex rel. Carter-Schneider-Nelson, Inc. v. Campbell, 293 F.2d 816 (9th Cir. 1961), cert. denied, 368 U.S. 987, 82 S.Ct. 601, 7 L. Ed.2d 524 (1962); Swig v. Tremont Trust Co., 8 F.2d 943 (1st Cir. 1925) and Tillman & Bendel v. California Packing Corporation, 63 F.2d 498 (9th Cir. 1933).

In Waterman Steamship Corporation v. Gay Cottons, 414 F.2d 724 (9th Cir. 1969), the Court permitted a non-appealing party, successful below, to attack the Judge's findings, saying:

"Appellees contend that the denial of limitation of liability can be affirmed on other grounds. Although they filed no cross-appeals, they argue that certain of the District Court's findings of fact were clearly erroneous. This they may do. A cross-appeal is needed only when a party seeks to change or add to the relief afforded below, but not when a party merely seeks to sustain a judgment for reasons presented at trial but not relied upon by the trial judge (or even determined by the judge adversely to the appellee). An appellee may urge any matter appearing in the record to support a judgment."

In Cook v. Hirschberg, 258 F.2d 56 (2d Cir. 1958), the appellee was permitted on his opponent's appeal to attack the ruling of the Judge below rejecting one of his three defenses.

On the other hand, in Schildhaus v. Moe, 319 F.2d 587 (2d Cir. 1963), the Circuit Court refused to review findings adverse to the non-cross-appealing appellee. In United States Potash Co. v. McNutt, 70 F.2d 126 (10th Cir. 1934) the appellee who did not cross-appeal was not permitted to claim as error the Presiding Judge's refusal to submit an issue to the jury.

Thus, while it appears certain that a Federal non-cross-appealing appellee cannot use his opponent's appeal as a vehicle with which to enlarge his judgment—for example, he may not seek to increase a monetary award of damages—it is by no means clear what grounds apparent on the record *are* available to him in the Federal Courts when he seeks only to defend his judgment.

On the other hand, the State Court decisions on this issue appear almost unanimously to hold that an appellee who has not cross-appealed cannot defend his judgment by attacking findings adverse to him which he contends would, if correctly decided, have furnished additional grounds to support his judgment. Chappell v. Odd Fellows Home, Etc., 85 R.I. 429, 132 A.2d 72 (1957); Muck v. Ideal Cement Com-

pany, 223 Or. 457, 354 P.2d 821 (1960); National Motor Service Co. v. Walters, 85 Idaho 349, 379 P.2d 643 (1963); Cole v. Anderson, Okl., 304 P.2d 295 (1956); Petition of the Detroit Edison Company, 365 Mich. 35, 112 N.W.2d 109 (1961); Standard Farm Stores v. Dixon, Ky., 339 S.W.2d 440 (1960).

We consider that better reasoning supports the latter construction. As some of these State decisions have declared, a knowing failure to appeal from a judgment is an acquiescence in the judgment. An appellee may be expected to resort to the record to support affirmatively the findings and judgment of the Judge below, even relying upon evidence not specifically cited by the Judge in his decree, but the basic philosophy of the civil rules demands a notice to the appellant if the *appellant* is to be required to *defend* some parts of the judgment.

The appellee here was entitled to resort to the record, as he did, to defend both the Judge's finding that the existence of condonation barred the Plaintiff from a decree of divorce and the judgment based on this finding. Although he was also attempting to "defend his judgment" when he argued in the Superior Court that the Judge was in error in refusing to find that cruel and abusive treatment had not been proved, he was no longer acquiesing in the decree but attacking its validity. This we feel he may not do without having filed a notice of cross-appeal.[2]

2. The uncertainty which has prevailed concerning this procedural question has not disadvantaged the Defendant. The record supports the Judge's finding that the then unrefuted testimony presented by the Plaintiff, along with the exhibits, evaluated as to credibility by the Judge with proper inferences which he was entitled to draw from them, constituted cruel and abusive treatment. Holyoke v. Holyoke, 78 Me. 404, 6 A. 827 (1886); Bond v. Bond, 127 Me. 117, 141 A. 833 (1928); Gruber v. Gruber, 161 Me. 289, 211 A.2d 583 (1965).

## CONDONATION

Although this Court has never ruled upon the precise issue presented by the Judge's findings, an examination of the few references to the legal principle of condonation which we have announced in prior decisions may aid in our conclusion as to the working of this principle in this jurisdiction.

In Backus v. Backus, 3 Me. 136 (1824) our Court stated, briefly, that evidence that

" . . . the wife, after knowledge of the offence [adultery], had co-habited with the husband, and had children by him, forgiving the injury he had done her. . . . "

could be presented in defense although it had not been specially pleaded.

In Danforth v. Danforth, 88 Me. 120, 33 A. 781 (1895), in an action for divorce for desertion, the Defendant wife, who had left her husband and moved to another county, raised as a defense the fact that the husband had once during the three year statutory period come to her new home and they had

" . . . [occupied] the same bed as husband and wife two or three nights, she still refusing, however, to return to his house and live with him as his wife . . . "

Although the Court was speaking of the interruption of the statutory period of desertion, its reasoning is of interest:

"Such a visit is not illegal or improper. On the contrary, it has often been

The Defendant also argued that the Judge in the District Court could not correctly find that cruel and abusive treatment had been proved because of the absence of any testimony of corroborating witnesses. While the wisdom of the practice of requiring corroboration of the testimony of a Plaintiff in a divorce action has been accepted by our Courts for many years it is, as we have said before, a rule of practice and not an inflexible rule of law. Sweet v. Sweet, 119 Me. 81, 109 A. 379 (1920).

held to be the duty of the husband to visit his absent wife, and to endeavor by all proper means to effect a reconciliation. If he succeeds, and his wife returns to her home and to her duties as his wife, undoubtedly her prior desertion will be interrupted, or regarded as condoned, and can not be added to a subsequent desertion for the purpose of completing the three years necessary to entitle her husband to a divorce. But if, in spite of his efforts, his wife persistently and unreasonably refuses to return, and continuously remains away from him for three consecutive years, we think her husband's right to a divorce is complete; that the mere fact that on one occasion he visited her, and for two or three nights occupied the same bed with her, does not interrupt the continuity of her desertion." Danforth v. Danforth, supra at 121, 33 A. at 781.

In Thompson v. Thompson, 79 Me. 286, 9 A. 888 (1887) the libellant wife had returned to live at the home after the alleged cruel and abusive treatment. Testimony concerning the circumstances preceding her return were excluded by the Presiding Justice. In sustaining her appeal this Court said:

"It further appears that an important question involved in the issue was whether the previous alleged violence had been condoned by her return. Hence the circumstances under which she returned, and the inducements held out to secure that return, were material upon this question of condonation. . . ."

This Court in Sweet v. Sweet, supra, found no error in the lower Court's refusal to hold that the parties' cohabitation following the Libellant's cruel conduct erased the prior bad behavior from consideration as a ground for divorce. The Court, apparently accepting the theory that a conditional restoration of marital rights fails to bar a decree of divorce if the condition was later broken, said:

"The evidence shows personal violence inflicted upon the libellant by the libellee in February or March of that year of a nature constituting extreme cruelty. If their later cohabitation until September of that year was a condonation of his cruelty, it was upon the condition, express or implied, of good behavior on his part and kind treatment of her."

Lausier v. Lausier, 123 Me. 530, 124 A. 582 (1924) concerned an action for divorce on the ground of permanent impotency. The Court briefly discussed the defense of condonation:

"Nor do we think such a fault may be condoned. Condonation implies forgiveness for past offenses, not continuing ones; an overlooking in consideration of promises of better behavior in the future."

The ground upon which a divorce was granted in Christensen v. Christensen, 125 Me. 397, 134 A. 373 (1926) was adultery which the lower Court found not to have been condoned. This Court further defined this defense:

" 'Condonation means a blotting out of the offense imputed so as to restore the offending party to the same position he or she occupied before the offense was committed.'

.    .    .    .    .    .

To be effectual, condonation must include a restoration of the offending party to, or a continuance of, all marital rights, after the offense becomes known. While condonation imports forgiveness, the converse is not necessarily true. The offended party may forgive, in that they may not bear any ill will, yet withhold a complete reconciliation in the sense of reinstating the offender to conjugal cohabitation and full marital rights.

The preliminary steps toward reconciliation and ultimate condonation, such as receiving the offending spouse back into the home, as in the case at bar, does not alone constitute condonation, so long

as full marital rights are intentionally withheld. . . .

. . . [T]he burden is on the party setting up the offense to prove it.

. . . [C]ondonation is a fact to be proved and found . . . ."

■■ It appears that a summary of our already announced decisional law on the subject reveals that we consider condonation to be an affirmative defense to be proved as fact by the party raising it. If the evidence is undisputed the question is one of law. Condonation occurs when the injured spouse, with knowledge of the misconduct, undertakes expressly or impliedly to overlook and forgive the wrongs and restores the other spouse unconditionally (or conditionally if there is no recurrence of the bad conduct) to the enjoyment of all marital rights. The significance of an injured party's brief return to the marital home following the bad conduct depends upon the circumstances under which the return occurred.

■ The significance of the parties' engaging in acts of sexual intercourse during the separation—as distinguished from full cohabitation[3]—has not been considered by this Court but it seems clear that to hold that sexual intercourse alone is per se condonation would be a departure from our earlier reasoning.

The Judge in the District Court ruled that:

"The act of sexual union unreservedly entered into, while separate in a physical sense from other aspects of the marital relationship, in view of this Court, renews the wholeness of the marriage contract initially entered into and constitutes condonation."

and again:

"The sex relationship entered into without expressed reservations is a restoration of all marital rights, and is, therefore, condonation."

The Judge was holding that acts of sexual intercourse by estranged couples, entered into without reservation, are condonation per se. The Justice in the Superior Court held that this is an incorrect ruling of law. We agree with the Justice.

■ Forgiveness[4] and a mutual intention to renew the full marital relationship are also essential elements of condonation. While sexual intercourse is only one element of the marital relationship—although a very important one—it may, nevertheless, furnish the basis from which the expressed intentions of the parties may be tested and the unexpressed intentions inferred.[5]

As this Court pointed out in Thompson v. Thompson, supra, the circumstances under which the sexual activity occurred are relevant to the legal significance of the acts. It would be unrealistic and unfair to hold as a matter of law that estranged spouses who engage in isolated acts of intercourse without resuming full cohabita-

3. Although the Court was interpreting a statute, a good definition of cohabitation is found in Kinley v. Kinley, Sup., 115 N.Y.S.2d 341, 342–343 (1952):
"  . . . The term 'cohabitation' . . . means more than a single act of intercourse . . . The term in its true meaning implies a relationship of a more permanent nature, a relationship existing over some period of time, not an isolated meeting of a few hours . . . ."

4. Forgiveness as used in discussions of the principle of condonation means more than

mere state of bearing no ill will. It means the overlooking of the bad conduct to the end that it will not stand in the way of full reconciliation and renewed conjugal cohabitation. Christensen v. Christensen, supra; Lausier v. Lausier, supra. See also 38 N.D.L.Rev. 354 (1962).

5. Norman v. Norman, 88 W.Va. 640, 107 S.E. 407 (1921); Weber v. Weber, 195 Mo.App. 126, 189 S.W. 577 (1916); Murray v. Murray, 38 Wash.2d 269, 229 P.2d 309 (1951); Annot. 32 A.L.R.2d 107, 136 (1953).

tion mutually intend condonation and a resumption of the full marriage relationship.

While we find that some courts hold that sexual intercourse is conclusive proof of condonation,[6] some of them reasoning that sexual activity *is* forgiveness,[7] we consider such holdings to be contrary to human experience and our own earlier decisions.

On the other hand, we emphasize that there is a strong public interest in the orderly and serious disposition of actions for divorce and annulment. Irrespective of the defense of condonation, a continued cohabitation of the parties while a divorce action is pending is usually completely inconsistent with a serious and thoughtful decision to seek the dissolution of the marital status.[8]

Balancing society's concern in avoiding frivolous, ill-considered decisions to press for dissolution and its equally cogent interest in encouraging advisable reconciliations, many courts have held that sexual intercourse raises a presumption of forgiveness.[9] We consider that such a rule satisfies the public interest and fairly recognizes the realities of human nature. It is especially appropriate in cases, like this, where an action for divorce is pending at the time of the sexual activity. It is a logical development of the principle which we chose to adopt in 1887 that the circumstances of a resumption of cohabitation are relevant upon the issue of condonation.

We hold that while condonation is, as we have said, an affirmative defense, there is a rebuttable presumption that sexual activity represented forgiveness and a mutual intention for a restoration of all marital rights. This leaves the party seeking the divorce to meet the presumption by demonstrating that it is at least as likely that the sexual activity had another origin and meaning.[10]

## FURTHER HEARING

After testimony by the Plaintiff herself, direct and cross, had been completed, the Defendant moved that the complaint be dismissed arguing that the Plaintiff had failed to prove that she was entitled to a divorce on the grounds of cruel and abusive treatment. The issues of condonation and recrimination were then argued. The Judge remarked that they were "right in the middle of the case" and stated that he was prepared "to rule on the basis of what has occurred up to this point". Counsel for the Plaintiff stated that he had nothing further to add on the issues of cruel and abusive treatment, recrimination or condonation.

The Judge then found that the Plaintiff had proved cruel and abusive treatment which would be a ground for divorce and that there was no recrimination but that the parties' acts of sexual intercourse taking place while the complaint was pending were condonation per se and so he dismissed the complaint.

6. Collins v. Collins, 194 La. 466, 193 So. 702 (1940); Wright v. Wright, 153 Neb. 18, 43 N.W.2d 424 (1950); Tarr v. Tarr, 184 Va. 443, 35 S.E.2d 401 (1945).

7. Phinizy v. Phinizy, 154 Ga. 199, 114 S.E. 185 (1922); Dunn v. Dunn, 26 Neb. 136, 42 N.W. 279 (1889).

8. We do recognize that economic realities or family obligations may sometimes prevent the wife from leaving the family home until she is able to obtain financial or other assistance through court order. In an excellent study of condonation in 2 Williamette L.J. 183 (1962), Kenneth W. Weber examines the numerous decisions in which courts have recognized that circumstances other than those constituting condonation may, in some instances, justify the injured spouse in continuing to live temporarily in or return temporarily to the house of the offender.

9. Sayles v. Sayles, 41 R.I. 170, 173, 103 A. 225, 226 (1918); Graves v. Graves, 123 Ind.App. 618, 621–622, 112 N.E.2d 869, 871 (1953).

10. Hinds v. John Hancock Mutual Life Insurance Co., 155 Me. 349, 155 A.2d 721 (1959).

On the Plaintiff's appeal, the Justice in the Superior Court held—as we do—that the Judge was in error for dismissing the complaint for condonation and he ruled that Plaintiff was thus entitled to a decree of divorce.

Defendant's appeal to us urges us that as the Judge's dismissal of Plaintiff's complaint is being reversed, the Defendant is now entitled to further hearing in the District Court where he may now present evidence in defense against her complaint.

The Plaintiff argues that the Defendant having made a tactical election to attack Plaintiff's position by a motion to dismiss without presenting evidence, and, having lost on appeal on this issue, is now precluded from presenting further evidence.

M.R.C.P., Rule 41(b) (2) reads, in part:

". . . After the Plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief . . . ."

The rule does not answer the precise question facing us—that is, whether a Defendant whose motion for dismissal at the end of the Plaintiff's case had been granted *and then later set aside on appeal* is entitled to further hearing.

Rule 41(b) (2), as the Reporter's Notes point out, is a significant change in the previously existing practice in that it permits the Defendant to offer evidence after his motion to dismiss at the end of the Plaintiff's case has been denied. Field,

McKusick and Wroth, Maine Civil Practice, § 41.7. Its purpose was to enable the Defendant to test the validity of the Plaintiff's case without risking the loss of opportunity to present his defense, thus giving the Court opportunity to avoid waste of time and unnecessary effort by the Defendant when the Plaintiff's own case appears lacking in merit. This serves a bilaterally beneficial purpose in view of the Court's discretionary power to dismiss without prejudice if it appears that the Plaintiff deserves a chance to remedy the defect in his proof. It appears to us that these purposes would be largely frustrated if, in spite of the rule, a Defendant ran the risk of forfeiting his right to present his defense in the event the Judge's decision in his favor was set aside on appeal.

We interpret the rule to hold as though, after the words "in the event the motion is not granted", there was added "or in the event the motion is granted and the judgment in the Defendant's favor is set aside on appeal". Therefore, the Defendant, who had not rested, is now entitled to present evidence in defense.

That part of the judgment of the Justice in the Superior Court setting aside the dismissal of Plaintiff's complaint by the Judge in the District Court is sustained.

That part of his judgment granting a divorce to the Plaintiff was error and as to this the appeal is sustained.

Remanded to the District Court for further hearing.[11]

ARCHIBALD, J., did not sit.

All Justices concurring.

11. In 1971 the Legislature amended 19 M.R.S.A. § 691 by adding the following sentence:

"Condonation of the parties shall not be an absolute defense to any action for divorce but shall be discretionary with the court."