**HARTFORD FIRE INSURANCE COMPANY**

v.

**MERRIMACK MUTUAL FIRE INSURANCE CO.**

Supreme Judicial Court of Maine.

Argued Sept. 9, 1982.

Decided March 2, 1983.

Norman & Hanson, James D. Poliquin (orally), Portland, for plaintiff.

Hewes, Culley, Feehan & Beals, Martica F. Sawin (orally), Portland, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and VIOLETTE, JJ.

GODFREY, Justice.

This is an appeal by the plaintiff Hartford Fire Insurance Company ("Hartford") from a grant of summary judgment by the Superior Court for the defendant Merrimack Mutual Fire Insurance Company ("Merrimack"). We vacate the judgment.

On November 15, 1977, Merrimack issued a fire insurance policy for a three-year term to James and Loree Stewart as owners of a house and barn located in East Windham. The policy contained a standard mortgage clause providing for payment upon fire loss to the named mortgagee, Portland Savings Bank ("Bank"), as interest might appear.

On June 27, 1978, the Bank began foreclosure proceedings against the Stewarts. On or about June 1, 1979, the Bank sent a written "notice to quit" to the tenants residing in the Stewart premises. On June 27, 1979, the Stewarts' statutory redemption period expired and the Bank became owner by operation of law. The tenants vacated the premises in mid-July, 1979. The Bank then placed the property on the market for sale. The premises remained vacant until the November 10, 1979, fire loss which gave rise to this action. The Bank did not notify Merrimack of either the foreclosure proceedings, the vacancy, or its sole ownership of the premises at any time before the fire.

On December 28, 1979, Merrimack notified the Bank that the policy would be cancelled as of January 21, 1980. On February 8, 1980, Merrimack denied coverage for the fire on the ground that the Bank had breached the provisions of the mortgage clause by not notifying Merrimack of the change in ownership or of the vacancy.

The Bank had also arranged in April, 1979, to have the premises insured under its master policy with the plaintiff Hartford.

Hartford paid the Bank for the loss and became subrogated to the Bank's rights under the Merrimack policy.

Hartford instituted this suit to recover Merrimack's share of liability for the loss, plus interest and costs. The Superior Court granted Merrimack's motion for summary judgment and denied Hartford's motion for summary judgment. In doing so, the court found the Bank's change in status from mortgagee to owner was insufficient, by itself, to cut off the Bank's right to recover under the policy. However, it also found that the Bank's failure to notify Merrimack of the vacancy operated as a breach of the policy, relieving Merrimack of any obligation to pay.

The "standard" or "union" mortgage clause in an insurance policy protects the interest of a mortgagee in the insured real property. *See* 6A J. Appleman, *Insurance Law and Practice* § 4164 (1972). It provides that the policy is payable to the mortgagee (here the Bank), whose interest shall not be invalidated or affected by any act or neglect of the mortgagors (here the Stewarts). The clause provides, in pertinent part, as follows:

Loss, if any, under this policy, shall be payable to the aforesaid as mortgagee (or trustee) as interest may appear under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title of ownership of the property, nor by the occupation of the premises for purposes more hazardous than permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy the mortgagee (or trustee) shall, on demand pay the same.

However, the mortgage clause also required the Bank to notify the insurer, Merrimack, of any change in ownership, occupancy, or increase in hazard which came to the Bank's attention:

> Provided, also, that the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

The issue before the Court is whether the standard mortgage clause permits Hartford, as the Bank's subrogee, to recover despite the Bank's failure to notify Merrimack of either the vacancy or the foreclosure of the insured premises.

### I. Failure to Notify Merrimack of the Vacancy.

At the outset, we reject Hartford's argument that the notice requirements of the mortgage clause did not apply because the Bank was not a mortgagee at the time of the loss. The Bank became owner of the premises on June 27, 1979, when the Stewarts' statutory redemption period expired, about two weeks before the premises became vacant and more than four months before the fire. Hartford contends that the Bank was no longer bound to give notice of vacancy once its interest changed from mortgagee to outright owner.

Such a narrow reading of "mortgagee", when used to identify the party bound to give notice of vacancy, is inconsistent·with the meaning of "mortgagee" elsewhere in the mortgage clause, where the term is also used to identify the party entitled to recover upon loss. In that context, "mortgagee" is used as a convenient designation rather than as importing a continuing condition of coverage. That the mortgagee no longer

has the status of mortgagee because it has foreclosed on the mortgage does not alone bar it from recovery. 10A *Couch on Insurance* § 42:722 (M. Rhodes rev. 2d ed. 1982); *see, e.g., 495 Corp. v. New Jersey Insurance Underwriting Association,* 86 N.J. 159, 430 A.2d 203 (1981); *Federal National Mortgage Association v. Hanover Insurance Co.,* 243 Ga. 609, 255 S.E.2d 685 (1979); *Shores v. Rabon,* 251 N.C. 790, 112 S.E.2d 556 (1960). Indeed, Hartford itself, in arguing that foreclosure did not bar recovery, urged the Superior Court to adopt this broader reading of "mortgagee." Hartford cannot have it both ways—reading the mortgage broadly to gain the benefits of mortgagee status but narrowly to avoid the responsibilities that go with such a status.

In the alternative, Hartford argues that even if its duty as mortgagee to give notice survived foreclosure, such notice was excused because certain language in the Merrimack policy permitted vacancy of unlimited duration. Hartford thereby raises two issues: first, whether the policy permitted unlimited vacancy; and, second, whether permission for unlimited vacancy excused notice by the Bank of that vacancy.

It is unclear whether the policy does indeed permit unlimited vacancy. On the one hand, the standard vacancy and increase-in-hazard provision, which is required by 24–A M.R.S.A. § 3002 (1974), states: "Unless otherwise provided in writing added hereto this Company [Merrimack] shall not be liable for loss occurring ... while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days . . . ." On the other hand, paragraph 11 of a section of the policy entitled "Additional Conditions" contains the statement: "Permission granted for vacancy or unoccupancy without limit of time except as otherwise provided in this policy." [1] Thus, the language of the policy is circular; the basic policy limits vacancy to sixty days, subject to paragraph 11, which allows unlimited

---

1. Similarly, paragraph 10 of the "Additional Conditions" states: "The policy condition suspending this insurance while the hazard is increased is waived."

vacancy subject to the basic policy. However, it is not necessary to resolve this paradox, because counsel for Merrimack conceded at oral argument that the net effect of the policy is to allow unlimited vacancy. Instead, we focus attention on the second issue: whether permission for unlimited vacancy excused notice by the Bank of the long vacancy that the Bank knew about.

▪ Merrimack argues that the Bank's contract with Merrimack consists solely of the mortgage clause, which imposes the duty to give notice. Thus, the argument goes, the Bank may not rely on paragraph 11 of the "Additional Conditions," which permits unlimited vacancy but is not contained in the standard mortgage clause, to absolve itself of its duty to notify the insurer. We reject the argument. It is true that the insurance of the mortgagee's interest under the standard mortgage clause is in many respects a separate and independent contract of insurance. *Union Trust Co. v. Philadelphia Fire and Marine Insurance Co.,* 127 Me. 528, 533, 145 A. 243, 246 (1929). Nevertheless, the standard mortgage clause could not represent the entire independent contract of insurance between the Bank and Merrimack. It attains meaning only by reference to the underlying policy:

> The rule that the standard loss clause creates a separate contract between the mortgagee and the insurer cannot be literally applied, to the exclusion of other provisions of the policy, for without those other provisions there would be no definition of the terms of the insurance, such as the property covered, the amount, and so on. Rather the standard mortgagee clause creates an independent contract of insurance for the mortgagee's separate benefit, engrafted upon the main contract of insurance contained in the policy itself, which is rendered certain and understood by reference to the policy which makes it complete.

10A *Couch on Insurance, supra,* § 42:731 (footnotes omitted).

▪ We conclude that the Bank's contract includes by reference paragraph 11, permitting unlimited vacancy. But the inquiry is not complete: permission for unlimited vacancy does not necessarily excuse notice by the Bank of that vacancy.

The mortgage clause itself requires the mortgagee to notify Merrimack of "any change of ownership or occupancy" which comes to the knowledge of the mortgagee. Notice is not in terms limited to changes in occupancy that violate the underlying policy. Thus, under a literal reading of the mortgage clause, permission for vacancy would *not* excuse notice.

Yet particular language in an insurance policy draws meaning from the policy as a whole. *E.g., Farm Bureau Mutual Insurance Co. v. Waugh,* 159 Me. 115, 119–20, 188 A.2d 889, 892 (1963). A literal reading of particular policy language in isolation may be mistaken. Here, a literal reading would be contrary to the basic purpose of the standard mortgage clause.

As the Law Court explained in *Union Trust,* 127 Me. at 538–39, 145 A. at 248–49:

> Prior to its insertion in the standard policies, the mortgagee might be deprived of his protection by some act or neglect of the mortgagor of which he had no knowledge and to protect himself would be compelled to take out separate insurance in his own name.
>
> It was to avoid this that the 'union [or standard] mortgage clause' was inserted....
>
> ....
>
> But ... a mortgagee under such a clause is protected only where the act or neglect of the mortgagor or owner is unknown to him.... If he has actual knowledge [or inquiry notice] *of any act or neglect that would invalidate the policy* ... then the provisions of the 'union mortgage clause' will not protect him.

(citations omitted; emphasis added). In other words, the basic purpose of the standard mortgage clause is to leave the mortgagee protected in situations where the mortgagor would forfeit his insurance be-

cause of a breach of condition. A literal reading of the notice provision in the standard mortgage clause would yield an anomalous result when, as here, the policy itself permitted unlimited vacancy: the mortgagee would forfeit protection for failing to give notice of vacancy while the mortgagor remained insured because he had done nothing that violated a condition of the policy.

Merrimack suggests, however, that after foreclosure the notice requirement serves a useful function by permitting the insurer to cancel its policy rather than continue insurance on newly enhanced, unwanted risks. Relying on an affidavit submitted by its agent, Merrimack argues that it would have cancelled the policy had it received notice, since it "does not engage in the specialized line of insuring vacant property which is owned by banks." Persuaded by that argument, the Superior Court decided that Merrimack did not intend to cover the risk of vacancy after foreclosure and was thus, by lack of notice, relieved of its obligations under the policy. The court reasoned that a contrary result would give the Bank the benefit of continued coverage, at homeowner rates, of riskier, vacant property.

 Merrimack's affidavit cannot be used, of course, to demonstrate that the Bank has any obligations besides those created by the language of the policy itself, including the standard mortgage clause. Although extrinsic evidence of the parties' intent may be used to construe ambiguous written contracts,[2] yet "[i]n the absence of fraud, or mistake, the intention of the parties must be gathered, not from what the parties said or did or thought they intended, but from the contract itself. Even ambiguous language cannot be controlled by the insurer's understanding, without proof that such understanding was known to the in-

sured." 1 *Couch on Insurance* § 15:11 at 659 (R. Anderson 2d ed. 1959) (footnotes omitted).[3]

The flaw in Merrimack's position is that it is fundamentally inconsistent with paragraphs 10 and 11 of the "Additional Conditions." Those paragraphs grant unqualified permission for unlimited vacancy and waive the policy condition suspending the insurance while the hazard is increased. In effect, they announce that, for purposes of this particular insurance, Merrimack accepts all risks of unlimited vacancy and increased hazard. Now the insurer would have us import into that broad assumption of risk a limitation; namely, that the assumption of risk does not extend beyond foreclosure. We decline to do so. The policy contains no provision limiting the risks assumed under the "Additional Conditions." Instead, we conclude that the standard mortgage clause requires notice only of facts giving rise to a breach of some condition of the policy. If Merrimack is willing to insure vacant mortgaged property up to foreclosure but not afterward, it should draft its policies accordingly.

II. *Failure to Notify Merrimack of Foreclosure and Change of Ownership.*

Merrimack contends that the Bank's failure to notify Merrimack of the foreclosure and change in ownership deprived the Bank, and hence Hartford, of the right to recover for the fire loss.

As a threshold matter, Hartford argues that under *Littlefield v. Littlefield,* 292 A.2d 204 (Me.1972), Merrimack cannot defend its judgment on the basis of the Bank's failure to give notice of foreclosure and change in ownership, because Merrimack did not cross-appeal from what Hart-

---

**2.** *See Baybutt Construction Corp. v. Commercial Union Insurance Co.,* 455 A.2d 914 at 922 (Me.1983); *Banker's Life Insurance Co. v. Eaton,* 430 A.2d 833, 834 (Me.1981); *T-M Oil Co. v. Pasquale,* 388 A.2d 82, 85 (Me.1978).

**3.** This is merely an application of the rule of contract law that "[t]he court will not interpret

the words of an agreement so as to hold one party bound in accordance with the wholly unexpressed intentions and meanings and understandings of the other." 3 A. Corbin, *Contracts* § 538, at 67 (1960). *See, e.g., Union Bank v. Winnebago Industries, Inc.,* 528 F.2d 95, 99 (9th Cir.1975).

ford says was a ruling on that issue in favor of Hartford.

To treat the *Littlefield* question, it is necessary first to sort out which issues the Superior Court resolved. This case involves three potential bases for denying recovery to Hartford: (1) the Bank's increase in interest from mortgagee to owner; (2) the Bank's failure to notify Merrimack of the vacancy; and (3) the Bank's failure to notify Merrimack of the foreclosure. On the effect of the increase in interest, the court ruled in favor of Hartford: "Thus, the fact that Portland Savings increased its interest from mortgagee to owner is insufficient, of itself, to operate as a breach of the [mortgage] clause." On the effect of the failure to notify of vacancy, it ruled in favor of Merrimack.

However, it appears that the Superior Court never resolved the issue of *notice* of foreclosure and change of ownership. The court was aware that Merrimack had raised the issue: "Defendant further contends that the Bank's failure to notify Merrimack of the foreclosure proceedings, the ensuing vacancy and the legal transfer of ownership constituted a breach of the policy conditions." But that was the last time the court's opinion mentioned notice of foreclosure or of transfer of ownership. Later in its opinion, the court treated only the notice-of-vacancy issue, concluding that defendant did not "contemplate the risk of a vacancy resulting from foreclosure" and was therefore "under no contractual obligation to continue its coverage." In short, having decided the notice-of-vacancy issue in favor of Merrimack, the Superior Court had no occasion to resolve, and did not resolve, the very issue Hartford claims is beyond our jurisdiction on this appeal.

In *Littlefield,* this Court held that "an appellee who has not cross-appealed cannot defend his judgment by attacking findings adverse to him which he contends would, if

correctly decided, have furnished additional grounds to support his judgment." 292 A.2d at 208.[4] However, Merrimack raises an issue for which there were *no* lower court findings; *Littlefield,* by its own terms, does not apply.

A case more nearly on point is *Murray v. Waterville Board of Education,* 390 A.2d 516 (Me.1978), holding that an appellee need not cross-appeal to raise an issue that merely brings to the attention of the Law Court an alternative ground to uphold the judgment. Since the appellee in *Murray,* as in the present case, raised an issue unresolved by the lower court, she did not run afoul of the *Littlefield* condition requiring cross-appeal when the "*appellant* is to be required to *defend* some parts of the judgment." 390 A.2d at 518 n. 5 (quoting *Littlefield,* 292 A.2d at 209). In addition, Hartford and Merrimack properly pleaded and raised the unresolved issue below, a factor noted with approval by the *Murray* court. 390 A.2d at 518 n. 5.

Merrimack thus properly raises on appeal the issue of the effect of the Bank's failure to give notice of foreclosure and change in ownership. However, Hartford prevails on the merits. The governing rule, applicable unless the policy provides otherwise, is stated in 10A *Couch on Insurance* § 42:764 (M. Rhodes rev. 2d ed. 1982).

A provision that the mortgagee shall give notice of any change of ownership known to him ordinarily applies only to transfers by the mortgagor to third persons. Accordingly, the mortgagee under an independent mortgage clause requiring him to notify the insurer 'of any change of ownership' is not required to give notice of the purchase of the insured property by himself at foreclosure during the period of redemption. This conclusion is based upon the theory that the conveyance or transfer contemplated by the policy is one to a person who, by the

---

4. *Littlefield* has been criticized as being inconsistent with the spirit of the rules. *See* Note, *Cross-Appeals in Maine: Pitfalls for the Winning Litigant,* 25 Me.L.Rev. 105 (1973); Field,

McKusick & Wroth, *Maine Civil Practice* § 73.-10 at 445 (1981 Supp.). This case is not a proper occasion for considering whether *Littlefield* has continuing vitality.

terms of the policy, is not himself already insured thereby.

(footnotes omitted). *See, e.g., Federal National Mortgage Association v. Hanover Insurance Co.,* 243 Ga. 609, 255 S.E.2d 685 (1979); *Citizens Mortgage Corp. v. Michigan Basic Property Insurance Association,* 111 Mich.App. 393, 314 N.W.2d 635 (1981); [5] *495 Corp. v. New Jersey Insurance Underwriting Association,* 86 N.J. 159, 430 A.2d 203 (1981); *Shores v. Rabon,* 251 N.C. 790, 112 S.E.2d 556 (1960).

III. *Conclusion.*

The Superior Court's judgment granting Merrimack's motion for summary judgment and voiding the insurance for the Bank's failure to give notice of vacancy must be vacated and judgment entered granting Hartford's motion for summary judgment. On remand, the amount of the loss must be apportioned between Merrimack and Hartford in accordance with the policies and applicable rules of law.

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with this opinion.

All concurring.

---

**5.** *But see Consolidated Mortgage Corp. v. American Security Insurance Co.,* 69 Mich.App. 251, 244 N.W.2d 434 (1976).